## STANDARD PAINT COMPANY *v.* TRINIDAD ASPHALT MANUFACTURING COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 106.　Argued March 16, 1911.—Decided April 10, 1911.

No sign or form of words can be appropriated as a valid trade-mark which, from the nature of the fact conveyed by its primary meaning, others may employ with equal right for the same purpose. *Elgin National Watch Co.* v. *Illinois Watch Co.,* 179 U. S. 665.

A trade-mark must be distinctive in its original signification pointing to the origin of the article or it must become so by association. *Canal Co.* v. *Clark,* 13 Wall. 311.

"Rubberoid" being a descriptive word, meaning like rubber, the word "Ruberoid" is also descriptive, and, even though misspelled, cannot be appropriated as a trade-mark.

While the Circuit Court cannot take cognizance of the question of unfair competition by use of plaintiff's trade-name where diverse citizenship does not exist, and in a case where jurisdiction is based on trade-mark alone the judgment of that court is final, if diverse citizenship does exist and the requisite amount is in controversy, the judgment can be reviewed in this court on the question of unfair competition independently of the questions involving validity of the trade-mark.

The essence of unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and this cannot be predicated solely on the use of a trade-name similar to that used by plaintiff if such trade-name is invalid as a trade-mark. To do so would be to give the plaintiff's trade-name the full effect of a trade-mark notwithstanding its invalidity as such.

THE facts, which involve the validity of a trade-mark and the jurisdiction of this court on appeal from the Circuit Court of Appeals in a case involving validity of a trade-mark and also unfair trade where diverse citizenship exists, are stated in the opinion.

*Mr. John F. Green,* with whom *Mr. Frederick N. Judson* was on the brief, for appellant:

Under the Federal statutes, in force when complainant's trade-mark was registered, and when this action was instituted, this court, upon this appeal, has jurisdiction of the entire case and should decide all the questions arising upon the record, because the bill of complaint presents a claim arising under a Federal statute, in addition to alleging the diverse citizenship of the litigants. *Henningsen* v. *Fidelity Company,* 208 U. S. 404; *Northern Pacific Ry. Co.* v. *Soderberg,* 188 U. S. 526; *Pennsylvania Mutual Life Ins. Co.* v. *Austin,* 168 U. S. 685; *Northern Pacific Railroad* v. *Amato,* 144 U. S. 465; *Warner* v. *Searl & Hereth Co.,* 191 U. S. 195; § 6 of the Judiciary Act of March 3, 1891; *Elgin Watch Co.* v. *Illinois Watch Co.,* 179 U. S. 665. This case is unlike that of *Hutchinson* v. *Loewy,* 217 U. S. 457.

The jurisdiction of this court, on this appeal, extends not merely to the determination of the question of a valid trade-mark in the word "Ruberoid," but it extends also to the determination of the question of whether complainant is not entitled to relief on the distinct ground of unfair trade and competition, irrespective of any question of a valid trade-mark registered under the Federal statues. Therefore, even if this court should hold that complainant has no valid trade-mark in the word "Ruberoid" it must also determine whether complainant is not entitled to the relief prayed for upon the ground of unfair trade. Cases *supra,* and *William Holder* v. *Aultman, Miller & Co.,* 169 U. S. 81.

This case is also unlike those of *Leschen Rope Co.* v. *Broderick Rope Co.,* 201 U. S. 166, and *Elgin Watch Co.* v. *Illinois Watch Co.,* 179 U. S. 665.

The word "Ruberoid," as used by complainant to designate its roofing product, is a valid and proper trade-mark and trade-name. *Menendez* v. *Holt,* 128 U. S. 514; *Keasley* v. *Brooklyn Chemical Works,* 142 N. Y. 467; *Re Eastman Co.,* 15 R. P. C. 476, *"Solio"* case.

The word "Ruberoid" is suggestive merely, and not descriptive, as those terms have been defined in the law of trade-marks. If we assume that it is derived from the word "rubber," as held in the majority opinion of the Circuit Court of Appeals, and that with the suffix "oid" added thereto, it means like rubber, still this derivation and meaning would not render it so descriptive as to be incapable of appropriation as a trade-name, because there is in fact no rubber used in its composition, and its only resemblance to rubber is in respect of its flexibility and its being waterproof. It has not any of the most distinctive properties of rubber, such as elasticity or resiliency. Therefore, it is suggestive and not descriptive, in any view which may be taken of its origin and derivation. Cases *supra* and *Menendez* v. *Holt*, 128 U. S. 514; see also *"Pepto-Mangan" Case*, 131 Fed. Rep. 160; *"Elastic" Book Case*, 121 Fed. Rep. 185; *"Eureka" Rubber Case*, 60 Atl. Rep. 561; *"Club" Whiskey Case*, 125 Fed. Rep. 782; *"Uneeda" Biscuit Case*, 95 Fed. Rep. 135; *"Anti-Washboard" Soap Case*, 26 Fed. Rep. 576; *"Swan-Down" Complexion Powder Case*, 85 Fed. Rep. 774; *"Bovril" Beef Extract Case*, 2 L. R. Ch. Div. 1898, 600; *"Camel's Hair" Belting Case*, 13 R. P. C. 218.

Wholly irrespective of the question of complainant's right to appropriate this word as a trade-name in the first instance, it is entitled to the relief prayed for on the distinct ground of unfair trade and competition. *Coates* v. *Merrick Thread Co.*, 149 U. S. 562; *Florence Mfg. Co.* v. *J. C. Dowd & Co.*, 178 Fed. Rep. 73; *Elgin Watch Co.* v. *Illinois Watch Case Co.*, 179 U. S. 665; *Wolff Bros.* v. *Hamilton Brown Shoe Co.*, 165 Fed. Rep. 413; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537; *Cleveland Stone Co.* v. *Wallace*, 52 Fed. Rep. 431; *Pillsbury Mills Co.* v. *Eagle*, 86 Fed. Rep. 608.

The evidence clearly indicates that defendant adopted and has used the word "RubberO" only because of its similarity to the word "Ruberoid," in order to enable it to

obtain the benefit of the advertising done by complainant in its territory and to sell its product to purchasers under the belief on their part that they are purchasing the product of complainant. Such conduct is unfair and fraudulent and should be enjoined. *Bates Mfg. Co.* v. *Bates Machine Co.*, 172 Fed. Rep. 892; *American Pencil Co.* v. *Gottlieb & Sons*, 181 Fed. Rep. 178.

Even if the evidence did not indicate such fraudulent purpose on the part of the defendant in· adopting the trade name of "RubberO," complainant would still be entitled to the relief prayed for, irrespective of any fraudulent intention on the part of the defendant, because there is sufficient similarity between the words "Ruberoid" and "RubberO" to mislead the ordinary purchaser. *Saxlehner* v. *Eisner & Mendelsohn*, 179 U. S. 19; *Eagle White Lead Co.* v. *Pfleugh*, 180 Fed. Rep. 579; *Saxlehner* v. *Siegel, Cooper & Co.*, 179 U. S. 41; *Elgin Co.* v. *Illinois Co.*, 179 U. S. 655; *Reddaway* v. *Benthan*, 9 R. P. C. 503.

The word "Ruberoid" had been so long used, and so exclusively appropriated, by complainant as a name for its roofing material that it had come to signify to the roofing trade the product of complainant exclusively; that is, the word "Ruberoid" had acquired a "secondary" meaning and therefore, on this ground also, complainant was entitled to the relief prayed for. *Elgin Watch Co.* v. *Watch Case Co.,* 179 U. S. 665; *Lowe Bros. Co.* v. *Toledo Varnish Co.*, 168 Fed. Rep. 627; *American Pencil Co.* v. *Gottlieb*, 181 Fed. Rep. 178; *Gustaviano Co.* v. *Comerma*, 180 Fed. Rep. 920.

*Mr. William B. Homer* and *Mr. R. M. Homer* for appellee, submitted:

The decision of the Circuit Court of Appeals in this cause was final, and this court will not take jurisdiction thereof. *Warner* v. *Searle & Hereth Co.*, 191 U. S. 195, 206; *Ryder* v. *Holt*, 128 U. S. 525; *Leschen Rope Co.* v. *Brod-*

*erick*, 201 U. S. 166; *Elgin Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665; *Trade-mark Cases*, 100 U. S. 82; *Wrisley Co.* v. *Rouse Soap Co.*, 90 Fed. Rep. 5, *Illinois Watch Co.* v. *Elgin Watch Co.*, 94 Fed. Rep. 667, 671.

Complainant's trade-mark is descriptive of the article upon which it is used, of its qualities, ingredients and characteristics, and is therefore void.

This appears from the description of the trade-mark and the material upon which it is used, as contained in the statement filed in the Patent Office, also from the complainant's own statement in its advertising matter, as well as in the testimony of its own witness. *Canal Co.* v. *Clark*, 13 Wall. 311, 323; *Goodyear Manufacturing Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598; *Brown Chemical Co.* v. *Meyer*, 31 Fed. Rep. 433, aff'd 139 U. S. 540; *Raggett* v. *Findlater*, L. R. 17 Eq. 29; *Bickmore Co.* v. *Manufacturing Co.*, 134 Fed. Rep. 833; *Marvel Co.* v. *Pearl*, 133 Fed. Rep. 160; *Scale Co.* v. *Scale Co.*, 118 Fed. Rep. 965; *Brennan* v. *Dry Goods Co.*, 108 Fed. Rep. 624; *S. C.*, 99 Fed. Rep. 971; *Washboard Co.* v. *Manufacturing Co.*, 103 Fed. Rep. 281; *Bennett* v. *McKinley*, 65 Fed. Rep. 505; *Rumford Chemical Works* v. *Muth*, 35 Fed. Rep. 524; *Fibre Co.* v. *Amoskeag Co.*, 37 Fed. Rep. 695; *Harris Drug Co.* v. *Stucky*, 46 Fed. Rep. 624; *Jaros Co.* v. *Fleece Co.*, 65 Fed. Rep. 424; *Leonard* v. *Wells*, 53 L. J. Ch. 233; *Re Roach*, 10 Pat. Off. Gaz. 333; *Re Goodyear Rubber Co.*, 11 Pat. Off. Gaz. 1062; *Ex parte Pikling*, 24 Pat. Off. Gaz. 899; *Scott* v. *Standard Oil Co.*, 106 Alabama, 475; *Burke* v. *Cassin*, 45 California, 467; *Larrabee* v. *Lewis*, 67 Georgia, 561; *Gilman* v. *Hunnewell*, 122 Massachusetts, 139; *Trask* v. *Wooster*, 28 Mo. App. 408; *Van Beil* v. *Prescott*, 82 N. Y. 630; *Town* v. *Stetson*, 3 Daly (N. Y.), 53; *Gessler* v. *Grieb*, 80 Wisconsin 21; *Alff* v. *Radam*, 77 Texas, 630; *Newcomer* v. *Scriven Co.*, 94 C. C. A. 77; *Carbolic Soap Co.* v. *Thompson*, 25 Fed. Rep. 625; *Asbestos Mfg. Co.* v. *Asbestos Co.*, 9 Fed. Rep. 85; and see 62 N. Y. Supp. 339; *Green* v. *Mfrs. Belt Hook*

*Co.*, 158 Fed. Rep. 640; *Scriven* v. *North*, 134 Fed. Rep. 366; *Wrisley Co.* v. *Soap Co.*, 87 Fed. Rep. 589; *Pratt* v. *Astral Refining Co.*, 27 Fed. Rep. 492; *Knitting Co.* v. *Knitting Co.*, 160 Fed. Rep. 1013; *Florence Mfg. Co.* v. *Dowd*, 178 Fed. Rep. 73; *Chance* v. *Gulden*, 165 Fed. Rep. 624; *Wolf* v. *Hamilton*, 165 Fed. Rep. 413; *Dry Goods Co.* v. *Scriven Co.*, 165 Fed. Rep. 639; *Searle & Hereth Co.* v. *Warner*, 112 Fed. Rep. 674; *S. C.*, 191 U. S. 195; *Leclanche Battery Co.* v. *Western Electric Co.*, 23 Fed. Rep. 276; *Caswell* v. *Davis*, 58 N. Y. 223; *Coats* v. *Merrick Thread Co.*, 149 U. S. 562; *Lawrence Mfg. Co.* v. *Tennessee Mfg. Co.*, 138 U. S. 537; *Amoskeag Mfg. Co.* v. *Spear*, 2 Sandford, 599.

The word used as a trade-mark had, when adopted by complainant, and long before its registration, become a word in general use. It had been used as a trade-mark by others, and had found a place in the dictionaries as a word describing substances which resemble rubber, without being rubber; that is, it was a word made up by adding the common suffix "oid," meaning "like," to the word rubber. *Dadirrian* v. *Yacubian*, 98 Fed. Rep. 872; *Goodyear Rubber Co.* v. *Rubber Co.*, 128 U. S. 594, 604.

There was no infringement of the complainant's trade-mark by the defendant. Cases *supra*, and *Columbia Mill Co.* v. *Alcorn*, 150 U. S. 460, 467; *Kann* v. *Diamond Steel Co.*, 89 Fed. Rep. 706; *Dunlap* v. *Surgical Co.*, 151 Fed. Rep. 223, 233; *Match Co.* v. *Match Co.*, 142 Fed. Rep. 727; *Marvel Co.* v. *Pearl*, 133 Fed. Rep. 160; *Elgin Watch Co.* v. *Ill. Nat. Watch Co.*, 179 U. S. 665, 694; *Howe Scale Co.* v. *Wyckoff, Seamans & Benedict*, 198 U. S. 118, 140; *Searle & Hereth Co.* v. *Warner*, 112 Fed. Rep. 674; *S. C.*, 191 U. S. 195.

MR. JUSTICE McKENNA delivered the opinion of the court.

The Standard Paint Company, which we shall call the

Paint Company, a West Virginia corporation and a citizen of that State, brought this suit against the Trinidad Asphalt Manufacturing Company, herein referred to as the Asphalt Company, a Missouri corporation, having its principal office in the city of St. Louis, Missouri, in the Circuit Court of the United States in and for the Eastern Division of the Eastern Judicial District of Missouri, to restrain the infringement of a duly registered trade-mark for the word "Ruberoid" to designate a certain kind of roofing materials for covering houses and other buildings. The Paint Company alleges in its bill that it has used the trade-mark for more than twelve years, and has advertised the roofing very extensively under the name "Ruberoid" roofing, and has built up a large and valuable trade therein in all parts of the United States and in foreign countries.

The roofing is manufactured in three different thicknesses, respectively called one, two and three-ply, and is then made up into rolls, the strips in each roll being about three feet in width and about seventy feet long. The rolls are covered with paper wrappers, on which are printed, in large type, the words "Ruberoid Roofing," and enclosed in the rolls are directions for handling and laying the same and the name of the Paint Company as manufacturer. The roofing contains no rubber.

The Asphalt Company also makes a roofing, not, however, of the same material as that of the Paint Company, but of the same thickness as the latter, and cut in the similar widths and lengths, and sells it under the name of "Rubbero" roofing.

Two contentions are made by the Paint Company: (1) That its trade-mark is a valid one and has been infringed by the Asphalt Company. (2) That the latter has been guilty of unfair competition. The Court of Appeals decided adversely to both contentions. 163 Fed. Rep. 977. Of the first contention the court said it was clear that the Paint Company "sought to appropriate the exclusive

use of the term rubberoid," and that its rights were to be adjudged accordingly, and that as the latter, being a common descriptive word, could not be appropriated as a trade-mark, the one selected by the Paint Company could not be appropriated. The court said: "A public right in rubberoid and a private monopoly of rubberoid cannot coexist." The court expressed the determined and settled rule to be "that no one can appropriate as a trade-mark a generic name or one descriptive of an article of trade, its qualities, ingredients or characteristics, or any sign, word or symbol which from the nature of the fact it is used to signify others may employ with equal truth." For this cases were cited and many illustrations were given which we need not repeat. The definition of a trade-mark has been given by this court and the extent of its use described. It was said by the Chief Justice, speaking for the court, that " the term has been in use from a very early date, and, generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendable commodities of particular merchants may be distinguished from those of others. It may consist in any symbol or in any form of words, but as its office is to point out distinctively the origin or ownership of the articles to which it is affixed, it follows that no sign or form of words can be appropriated as a valid trade-mark, which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose." *Elgin National Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665, 673. There is no doubt, therefore, of the rule. There is something more of precision given to it in *Canal Company* v. *Clark*, 13 Wall. 311, 323, where it is said that the essence of the wrong for the violation of a trade-mark "consists in the sale of the goods of one manufacturer or vendor as those of another; and that it is only when this false representation is directly

or indirectly made that the party who appeals to a court
of equity can have relief." A trade-mark, it was hence
concluded, "must therefore be distinctive in its original
signification, pointing to the origin of the article, or it
must have become such by association." But two qual-
ifying rules were expressed, as follows: "No one can claim
protection for the exclusive use of a trade-mark or trade-
name which would practically give him a monopoly in
the sale of any goods other than those produced or made
by himself. If he could, the public would be injured
rather than protected, for competition would be destroyed.
Nor can a generic name, or a name merely descriptive of
an article of trade, of its qualities, ingredients or character-
istics, be employed as a trade-mark and the exclusive
use of it be entitled to legal protection." And, citing
*Amoskeag Manufacturing Company* v. *Spear*, 2 Sandford's
Supreme Court, 599, it was further said there can be "'no
right to the exclusive use of any words, letters, figures or
symbols which have no relation to the origin or ownership
of the goods, but are only meant to indicate their names
or qualities.'"

Does the trade-mark of the Paint Company come within
the broad rule or within the qualifying ones? In other
words, does it have relation to the origin or ownership of
the roofing or is it merely descriptive of the roofing? It
is conceded that there is no rubber used in the prepara-
tion of the roofing. It is put forth as being in the "Nature
of Soft, Flexible Rubber." It is described in the certifi-
cate of registration as follows: "The class of merchandise
to which this trade-mark is appropriated is solid substance
in the nature of soft, flexible rubber in the form of flexible
roofing, flooring, siding, sheathing, etc., and the particu-
lar class of goods upon which the said trade-mark is used
is solid substance in the nature of flexible rubber." And
it is said that the "trade-mark consists in the arbitrary
word 'Ruberoid.'" Rubberoid is defined in the Century

Dictionary as a trade name for an imitation of hard rubber. It is a compound of the word "rubber" and the suffix "oid," and "oid" is defined in the same dictionary as meaning "having the form or resemblance of the thing indicated, 'like,' as in *anthropoid*, like man; *crystalloid*, like crystal; *hydroid*,, like water, etc. It is much used as an English formative, chiefly in scientific words." Rubberoid, therefore, is a descriptive word, meaning like rubber, but the Paint Company insists "Ruberoid" is suggestive merely, not descriptive, "because there is in fact no rubber used in its composition, and its only resemblance to rubber is in respect to its flexibility and its being waterproof." But this contention makes likeness and resemblance the same as identity. If the roofing of the Paint Company was identical with rubber it would be rubber and not as it is represented to be, as we have seen, "in the nature of soft, flexible rubber." It may rightly be called rubberoid, and so may be roofing made by others than the Paint Company having the same rubber-like qualities, flexibility and not pervious to water. The word, therefore, is descriptive, not indicative of the origin or the ownership of the goods; and, being of that quality, we cannot admit that it loses such quality and becomes arbitrary by being misspelled. Bad orthography has not yet become so rare or so easily detected as to make a word the arbitrary sign of something else than its conventional meaning, as different, to bring the example to the present case, as the character of an article is from its origin or ownership.

We content ourselves with applying the principle of the cases which we have cited and will not review the many cases in which it has been considered determinative or otherwise. These cases are collected in the opinion of the Circuit Court of Appeals and need not be repeated.

The second contention of the Paint Company is that the Asphalt Company has been guilty of unfair trade and

competition.   The latter company urges that we are
without jurisdiction to consider the contention and cites
*Leschen Rope Co.* v. *Broderick,* 201 U. S. 166, in which a
claim to a trade-mark for a distinctively colored streak
applied to or woven in a wire rope was declared invalid.
The bill, in addition to the infringement of the trade-mark,
alleged unfair competition.   The defendant in the case de-
murred on the ground that the trade-mark set up in the
bill was not a lawful and valid trade-mark.   The demurrer
was sustained and the bill dismissed and the decree of the
Circuit Court was affirmed by the Circuit Court of Appeals.
The case was appealed to this court and we affirmed the
decree holding that the trade-mark was invalid.   Exclud-
ing a right to take jurisdiction because the bill set forth
unfair competition, we. said: "Nor can we assume juris-
diction of this case as one wherein the defendant had made
use of plaintiff's device for the purpose of defrauding the
plaintiff and palming off its goods upon the public as of
the plaintiff's manufacture.   Our · jurisdiction depends
solely upon the question whether plaintiff has a registered
trade-mark valid under the act of Congress. . . ."
   The parties in that case were citizens of the same State,
and the jurisdiction of the Circuit Court depended entirely
upon the trade-mark statute.   In the case at bar there
is diversity of citizenship as a ground of jurisdiction as
well as the assertion of a valid trade-mark.   It is therefore
contended that *Leschen Rope Co.* v. *Broderick* is not ap-
plicable, because, as there was no valid trade-mark under
the Federal statute, it necessarily followed that the Circuit
Court was wholly without jurisdiction to try the case in
the first instance; the parties being citizens of the same
State; and, as the Circuit Court was without jurisdiction
to try the issue of unfair trade, the Circuit Court of Ap-
peals was also without jurisdiction, and that this court,
on appeal, could not decide that issue.   In the case at
bar, however, it is urged there is a diversity of citizenship

as well as the assertion of a right under the Federal statute, and that the Circuit Court and the Circuit Court of Appeals both had jurisdiction on that ground as well as on the other, and the case, therefore, it is contended, falls under *Henningsen* v. *United States Fidelity and Guaranty Co.*, 208 U. S. 404; *Northern Pac. Ry. Co.* v. *Soderberg*, 188 U. S. 526; *Penn. Mutual Life Ins. Co.* v. *Austin*, 168 U. S. 685; *Northern Pac. Rd. Co.* v. *Amato*, 144 U. S. 465; *Warner* v. *Searle & Hereth Co.*, 191 U. S. 195; *Elgin Watch Co.* v. *Illinois Watch Co.*, 179 U. S. 665.

Passing the last two cases for the moment, we may say of the others that while there was diversity of citizenship, and that would have given jurisdiction to the Circuit Court independently of any Federal question, statutory or constitutional, a consideration of a statute or the Constitution of the United States entered into the merits. Such is not the condition in the case at bar as to the issue of unfair trade. The asserted trade-mark as such is not an element. The issue is made independently of it, and under the assumption of its invalidity. If the trade-mark were valid, the issue of unfair trade would be unnecessary to decide. Such an issue between citizens of different States, even if there were no technical trade-mark, a Circuit Court would have jurisdiction to try, and the Circuit Court of Appeals would have jurisdiction to review, but the judgment of the latter court would be final.

*Warner* v. *Searle & Hereth Co.* and *Elgin Watch Co.* v. *Illinois Watch Co.* require special notice. In the latter case there was not diversity of citizenship, but there was the assertion of a trade-mark in the word "Elgin." The Circuit Court sustained it; the Circuit Court of Appeals held it invalid and reversed the decree of the Circuit Court and ordered a dismissal of the bill. This court affirmed the action of the Circuit Court of Appeals. It was held that the word was geographically descriptive and not subject to be registered as a trade-mark. It was contended,

however, that the word had acquired a secondary signification, and should not therefore be considered as merely a geographical name. It was conceded, in answer to the contention, that words could acquire a secondary signification, and their use in that sense be protected. But the concession and the discussion were for no other purpose than to bring out clearly, in opposition to the contention based on the secondary signification of a word, that it could be, though a generic and descriptive name, "lawfully withdrawn from common use" by being registered as a trade-mark. And the court was careful to observe that the question considered was not "whether the record made out a case of false representation or perfidious dealing, or unfair competition, but whether appellant had the exclusive right to use the word 'Elgin' as against all of the world." The question was asked, "Was it a lawful registered trade-mark?" If so, the answer was, "Then the Circuit Court had jurisdiction, under the statute, to award relief for infringement; but if it were not a lawful registered trade-mark, then the Circuit Court of Appeals correctly held that jurisdiction could not be maintained." The case may be said to be only of negative value. Unfair trade, we have seen, was referred to, and it was discussed also by the Circuit Court of Appeals, but it put it aside as an element of decision, because the court was, as it said, "without jurisdiction to grant relief," as the right of the Elgin Watch Company arose under the act of Congress, and was limited by the act to recovery of damages for the wrongful use of a trade-mark, or to a remedy according to the course of equity, "'to enjoin the wrongful use of said trade-mark used in foreign commerce or commerce with the Indian tribes.'" The remedy in equity for fraud, it was said, existed before the statute and was not given by it, and that the Federal court would have no jurisdiction of it except between citizens of different States. 94 Fed. Rep. 665, 671.

*Warner* v. *Searle & Hereth Company* was a suit between citizens of different States. The bill alleged the infringement of a trade-mark for the word "Pancreopepsine." Unfair competition was also alleged. The Circuit Court found that there was no proof of the latter but held that the complainant had a valid trade-mark and enjoined the defendant from its use. The Circuit Court of Appeals concurred in the finding as to unfair competition, but decided against the validity of the trade-mark and reversed the decree of the Circuit Court and ordered the bill to be dismissed. We affirmed the decree of the Circuit Court of Appeals and said that the courts of the United States cannot take cognizance of an action on the case or a suit in equity between citizens of the same State, "'unless the trade-mark in controversy is used on goods intended to be transported to a foreign country, or in lawful commercial intercourse with an Indian tribe.'" But we also said that "where diverse citizenship exists, and the statutory amount is in controversy, the courts of the United States have jurisdiction, but where those conditions do not exist, jurisdiction can only be maintained where there is interference with commerce with foreign nations or Indian tribes, . . ." It was held, besides, that as diverse citizenship existed the Circuit Court had jurisdiction, and in answer to the contention that as jurisdiction depended entirely on diversity of citizenship the decree of the Circuit Court of Appeals was final, this was said: "We think, however, that as infringement of a trade-mark registered under the act was charged, the averments of the bill, though quite defective, were sufficient to invoke the jurisdiction also on the ground that the case arose under the law of the United States, and will not, therefore, dismiss the bill."

No notice was given to the charge of unfair competition, and yet, if the contention of the Paint Company in the case at bar be sound, we should have decided that question because it was decided in the courts below, for, we have

seen, it is the contention of the Paint Company in this
case that the lower courts having jurisdiction to decide the
question of unfair competition, this court also has juris-
diction. But, as we have seen in *Warner* v. *Searle . &
Hereth Co.,* we did not pass on the question of unfair com-
petition, though the same conditions of jurisdiction existed
which exist in this case. *Warner* v. *Searle & Hereth Co.*
has in it, therefore, an element of uncertainty, but the
statute must be considered. It makes the judgment of
the Circuit Court of Appeals "final in all cases in which
the jurisdiction [the jurisdiction of the Circuit Court is
meant] is dependent entirely upon the opposite parties to
the suit or controversy, being aliens and citizens of the
United States or citizens of different States; also in all
cases arising under the patent laws, under the revenue
laws, and under criminal laws, and in admiralty laws."
In all other cases there is a right of review by this court if
there is the statutory amount involved. The case at bar
is within the letter of the statute. The opposite parties
to the suit are citizens of different States, and while this
diversity of citizenship was not necessary to give the Cir-
cuit Court jurisdiction of the case in so far as it involved
the validity of the trade-mark, it was necessary to give the
court jurisdiction of the issue of unfair competition. If
the latter had stood alone its decision would have been
final in the Court of Appeals, and this court would have
had no jurisdiction to review its decision, and there is
some objection on principle, notwithstanding the union
of the charge of unfair competition with the claim of a
trade-mark, to our taking jurisdiction, but such, we think,
is the effect of the statute. *Macfadden* v. *United States,*
213 U. S. 288; *Spreckels Sugar Refining Co.* v. *McClain,*
192 U. S. 397.

We come, therefore, to a consideration of the question
of unfair competition. The Circuit Court of Appeals de-
cided the question against the Paint Company. The views

of the Circuit Court may be open to dispute. The majority of the Court of Appeals was of opinion that, aside from the use of the word "rubbero," there was no imitation by the Asphalt Company of the Paint Company's roofing, indeed, that the "arrangement, color, design or general appearance of the wrappers and markings on the packages" were in such "marked contrast as to repel all suggestion of design on the part of the former to misrepresent the origin or ownership of its product." The Circuit Court expressed itself as follows: "It is true that there is no imitation in the arrangement, color or general appearance of the labels, as such, aside from the similarity of the names, but I think the use of names so similar on rolls of similar size and shape both containing roofing material is calculated, whether intentionally or unintentionally, to confuse and deceive the public." Circuit Judge Sanborn, dissenting from the opinion and judgment of the Court of Appeals, was of the opinion that the Circuit Court found that the Asphalt Company was guilty of unfair competition; and he concurred in the finding, thus giving the weight of his judgment to its support.

We think the evidence supports the conclusion of the Circuit Court of Appeals. The only imitation by the Asphalt Company of the roofing of the Paint Company is that which exists in the use of the word "rubbero," and this only by its asserted resemblance to the word "ruberoid." To preclude its use because of such resemblance would be to give to the word "ruberoid" the full effect of a trade-mark, while denying its validity as such. It is true that the manufacturer of particular goods is entitled to protection of the reputation they have acquired against unfair dealing, whether there be a technical trade-mark or not, but the essence of such a wrong consists in the sale of the goods of one manufacturer or vendor for those of another. *Elgin National Watch Co.* v. *Illinois Watch Co., supra.* Such a wrong is not established against the

Asphalt Company. It does not use the word "rubbero" in such a way as to amount to a fraud on the public.

                                        *Decree affirmed.*

MR. JUSTICE HUGHES concurs in the result.