THERMOGÈNE CO., Limited, v. THERMOZINE CO., Inc.

(District Court, S. D. New York. July 9, 1915.)

TRADE-MARKS AND TRADE-NAMES ⬸43—NAMES SUBJECT TO OWNERSHIP—DESCRIPTION OF ARTICLE—"THERMOGÈNE"—"THERMOGEN"—"THERME."

The registered trade-mark "Thermogène," a French word meaning to produce heat, the English equivalent of which is "Thermogen," defined as producing heat, both words compounded from the Greek word "Therme," heat, and the suffix "gen," as applied to complainant's cotton wadding, so prepared as to act as a counterirritant and to produce local heat at the point of application, and reducing swellings and inflammations, is not arbitrary or fanciful, but is a word of precise description, which cannot be registered as a trade-mark, so that defendant's mark "Thermozine," as applied to a dry poultice, where the cotton is accompanied by a package of wax to be applied to the cotton before using, intended to reduce inflammation by counterirritation, could not be an infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. ⬸43.]

In Equity. Suit for infringement of registered trade-mark by the Thermogène Company, Limited, against the Thermozine Company, Incorporated. Dismissed.

Hervey, Barber & McKee, of New York City (Lanier McKee, of New York City, of counsel), for complainant.

Edward H. Daly, of New York City (Joseph F. Daly, of New York City, of counsel), for defendant.

AUGUSTUS N. HAND, District Judge. Complainant sues for infringement of its registered trade-mark "Thermogène" by defendant's trade-mark "Thermozine." Complainant's trade-mark is applied to cotton wadding, so prepared as to act as a counterirritant and to reduce swellings and inflammatory conditions. Defendant's trade-mark is applied to goods designated in the declaration upon which the trade-mark was granted as a dry poultice, but the cotton, instead of being so prepared as to act alone as a counterirritant, was accompanied by a package of wax, which had to be applied to the cotton before using. The goods were in each case intended to reduce inflammation by counterirritation, and I consider them of substantially the same class.

The defendant insists that the word "Thermogène" is a French word meaning giving birth to heat, and produces a standard French dictionary containing the word with this definition. The strict English equivalent is "Thermogen," which is defined in the Century Dictionary as producing heat. Both these words are compounded from the Greek word "Therme," heat, and the suffix "gen," from which the word "genesis," or birth, is derived. Both the French and the English words are uncommon, but apparently in established use.

The physiological effect of the operation of the complainant's preparation is in fact the production of local heat. If, for example, the preparation be applied to a swollen joint, the effect is to draw the blood to the surface of the skin and away from the joint itself, thus reducing the inflammation, but, in so doing, producing heat as a local rise of temperature at the point of application will, I understand, attest. Entirely aside from whether a local rise of temperature would be caused, there is no doubt that a feeling of heat is one of the most pronounced effects of such a counterirritant.

In view of the foregoing facts, I am constrained to hold that the word "Thermogène" is really, as contended by defendant's counsel, a word of precise description. Though it be a fact that complainant's word is a foreign word, little or not at all known in this country, there is still no exclusive right to its use as a trade-mark.

As was said by Mr. Justice Chitty in the case of Davis & Co. v. Stribolt & Co., 59 L. T. Rep. N. S. 854, in discussing the Norwegian name "Bokol":

"To say that every word is a fancy word because it is unknown to an average Englishman would be plainly to lay down a proposition which could not, for a moment, be maintained. There are many good English words descriptive of articles which are unknown to an average Englishman, taking rather a high standard. Now, for the sake of caution and limiting my proposition to the European languages, I am of the opinion that, in reference to an article produced in a foreign country and imported into England, where it was previously unknown and without a name, the word used in that foreign country as the common term to describe or denote the articles is not a fancy word within the meaning of the act."

The difficulty with any other method of reasoning in cases of this sort is that the court is practically left without any guide in reaching a determination if it abandons the strict rule, which I admit has been more strongly adhered to in the English cases than in many of our

own courts, that a term which is really reasonably descriptive of any goods, whether or not the term be rare, cannot be registered as a trademark. This is illustrated by the English cases Re Grossmith's Trade-Mark "Emollio," 60 L. T. Rep. N. S. 612; The Trade-Mark "Sanitas," 58 L. T. Rep. N. S. 166; Van Duzer's Trade-Mark, 56 L. T. Rep. N. S. 286.

I reach the conclusion I have in this particular case with some hesitation, owing to the fact that Judge Lacombe granted a preliminary injunction in this suit. He apparently, however, only considered the fact that the defendant's name plainly infringed the name used by complainant, and did not, so far as appears from his memorandum, have before him the fact that the name "Thermogène" is a word in use in the French language, and that substantially the same word appears in the English dictionaries also. I should certainly have reached the same conclusion that he did if the dictionary words had not been brought to my attention and fully examined and discussed.

While there has been some divergence in the decisions of the state courts and among the federal courts, other than the Supreme Court of the United States, I think the latter has sustained the rather strict view in regard to trade-marks which I have adopted in this case.

In the recent case of Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536, the Supreme Court held that the word "Rubberoid" was descriptive and could not be appropriated as a trade-mark by the complainant. The goods to which the term "Rubberoid" applied were roofing which contained no rubber, but was supposed to have qualities like rubber, in that it was more or less flexible and impervious to water.

After careful consideration I am of the opinion that the word "Thermogène" is not arbitrary or fanciful, but a descriptive term, and that therefore it is not the proper subject of a trade-mark.

For the foregoing reasons the bill must be dismissed.