**VAN CAMP SEA FOOD CO., Inc., v. ALEXANDER B. STEWART ORGANIZATIONS.**

Patent Appeal No. 2708.

Court of Customs and Patent Appeals.

May 27, 1931.

Albert J. Fihe, of Chicago, Ill., for appellant.

James M. Naylor, of San Francisco, Cal. (Charles R. Allen, of Washington, D. C.,

and Wm. S. Graham, of San Francisco, Cal., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Commissioner of Patents, affirming the action of the Examiner of Interferences, dismissing the opposition, and adjudging the applicant, appellee, entitled to the registration for which application had been made.

The applicant seeks to register the term "White Chicken," used upon canned tuna.

The opposer sets up a prior use of the term "Chicken of the Sea," as a trade-mark for tuna fish, and shows ownership of registration No. 97,192, granted May 19, 1914, for the mark. According to the record, the "Chicken of the Sea" trade-mark has been used by opposer and its predecessors since 1914, and opposer spends approximately $60,000 annually in advertising this brand of tuna. Its sales, amounting to approximately five million cans annually, are made in all parts of the United States, and in Hawaii and Canada.

Appellee has used the term "White Chicken" on its goods since October 14, 1926. The Commissioner held that the goods of the two parties were identical, and that the only question involved for his decision was the question of confusion. He states:

"* * * In the ruling in the adjudicated case of Van Camp Sea Food Co., Inc. v. Westgate Sea Products Co., 28 F.(2d) 957 (C. C. A. 9th Cir.) it was finally determined that the notation 'Breast o' Chicken,' was not confusingly similar to the opposer's mark 'Chicken of the Sea.' The court found that the word 'chicken' had been widely used in a descriptive sense in connection with various foods, including fish, and that the opposer was not entitled to claim exclusive rights to the use of this word alone. Since the mark of the applicant here 'White Chicken,' is obviously no more similar to the opposer's mark than is the mark of the defendant in the adjudicated case, the finding of the court in that case is regarded as determinative of the question of similarity of the marks involved in the instant proceeding."

The record shows that the Van Camp Sea Food Company Inc., brought suit in the United States District Court for the Southern District of California against Westgate Sea Products Company for infringement of its mark "Chicken of the Sea," and alleged that the defendant's infringing mark was "Breast o'Chicken." The District Court dismissed the bill without hearing evidence. Appeal was taken to the Circuit Court of Appeals, Ninth Circuit, which court held [Van Camp Sea Food Co., Inc., v. Westgate Sea Products Co., 28 F.(2d) 957, 958] that the trial judge had the right to dismiss the bill without taking evidence. The Circuit Court of Appeals stated, evidently inadvertently, that the Westgate Products Company caused its "Breast o' Chicken" trade-mark to be registered. It is conceded that the term had not been registered. The court then held as follows:

"Were the word 'chicken,' common to the two trade-marks, a purely fanciful term, and made equally prominent in both, we might have a case of sufficient doubt to warrant a hearing of evidence. But, as registered, the two combinations are similar neither in appearance nor in sound, and if, as appellant contends, it be conceded that 'chicken' is the dominant word in its combination, it cannot be said to have such prominence in that of the defendant. Moreover, 'chicken,' as used by the plaintiff, is not a purely fanciful term, but is measurably descriptive. True, in its primary or most popular meaning, it designates the young of the domestic hen, and less commonly, the young of wild birds, but it is sometimes used to denote living things of the sea as well as of the land. Its application has been so extended apparently because in a figurative sense it has come to signify something young and tender.

"At page 336 of volume 2 of Murray's New English Dictionary of the Philological Society it is stated that, since early in the 1700's, 'chicken' has been so used as denoting a young and inexperienced person, and in Farmer and Henley's Dictionary of Slang and Colloquial English it is said that 'tender as chicken' dates backs to the fourteenth century. In the Century Dictionary it is referred to as a name applied with qualifying adjectives to various fishes. In the same work chicken halibut is defined as 'a halibut weighing from ten to twenty pounds.' And in the edition published as early as 1889 chicken lobster is said to be 'an undersized lobster,' too small to be legally marketable under the laws of some states. It will thus be seen that the term is not only more or less generally applied to sea life, but, when so used, it is understood to be descriptive of class or quality. We are not to be understood as necessarily holding that plaintiff's trade-mark is invalid; the combination as a whole may have validity. But, in view of the considerations just suggested, appel-

lant cannot, as in effect it seeks to do, abandon all but the word 'chicken' and claim that as its trade-mark. 'Chicken,' when applied to tuna, would, as when applied to halibut or lobster, denote young and tender meat, and hence would be descriptive of quality. That terms merely descriptive of quality cannot be appropriated as trade-marks is too well settled to require citation of authorities. On the point that generally a registered trade-mark is to be considered as an entirety, see John Morrell & Co. v. Hauser Packing Co. (C. C. A.) 20 F.(2d) 713; Ostermoor & Co. v. Rose Spring & Mattress Co., 55 App. D. C. 307, 5 F.(2d) 268; Loughran v. Quaker City, etc. (C. C. A.) 296 F. 822; Beckwith v. Commissioner of Patents, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705."

The record shows that, after the decision by the Circuit Court of Appeals, supra, a suit by the Van Camp Sea Food Company was begun against the appellee herein in the United States District Court for the Southern District of California, Central Division, and that in September, 1930, that court held in substance, among other things, that there was not sufficient similarity between the alleged trade-marks to produce confusion, and that the mark "White Chicken" did not infringe "Chicken of the Sea," and that the defendant had not committed acts of unfair competition against the plaintiff. It also held that the term "of the Sea," when used on a fish product, designated the place from which the product came, and added nothing to the descriptive word "chicken," and that the legend "Chicken of the Sea" was therefore invalid when used as a trade-mark for tuna.[1]

■ Under the statute, our duties in reviewing decisions of the Commissioner of Patents in trade-mark cases are quite different from those of a District or Circuit Court of Appeals in actions such as have been hereinbefore referred to. We determine the correctness of the Commissioner's ruling on the registrability of the trade-mark. The District and Circuit Courts of Appeals, in the above cases, were not concerned with this question. Our jurisdiction involves the question of the right to register, while the jurisdiction in the cases above referred to involves the right to use. California Packing Corp. v. Tillman & Bendel, 40 F.(2d) 108, 17 C. C. P. A. 1048; B. F. Goodrich Co. v. Hockmeyer, 40 F.(2d) 99, 17 C. C. P. A. 1068.

[1] Statements above are derived from the conclusions of law filed with the findings of fact. No opinion was written in this case.

Section 5 of the Trade-Mark Act of February 20, 1905 (15 USCA § 85) provides definitely that a trade-mark shall not be registered if such mark is so similar to a mark owned and used by another, when used upon goods of the same descriptive properties, as to be likely to cause confusion. It also provides definitely that the mark shall not be registered if it consists merely in words which are descriptive of the goods with which it is used or of the character or quality of such goods.

■ While the decisions of the District Court and the Circuit Court of Appeals, supra, involved issues which differ from those at bar, it is true that in their decisions they made certain findings with which we are concerned. We do not understand that their decisions on the subject of the descriptive quality of the term "Chicken of the Sea" or their findings on the question of similarity between "Chicken of the Sea" and "Breast o'Chicken" in an infringement action are to be considered by us as res adjudicata or controlling of the issue of the registrability of the term "White Chicken." Decisions of this character, when applicable, ought to be and are entitled to great respect here and by the Patent Office tribunals. They are, however, to be regarded as persuasive but not conclusive.

If "Chicken of the Sea" is descriptive of the goods, it is, of course, an invalid trade-mark, and should not have been registered, and, under the authority of the Trade-Mark Act, it could be cancelled upon proper petition. If "Chicken of the Sea" is descriptive, certainly "White Chicken" is more so. But, in view of our conclusion reached herein, it will not be necessary for us to determine whether or not "White Chicken" is either descriptive or misdescriptive.

■ The Commissioner of Patents should have refused registration of the term "White Chicken" for the reason, if for no other, that it was confusingly similar to "Chicken of the Sea," both marks being applied to goods of the same descriptive properties, and the word "Chicken" being the predominant word of the terms in sound, appearance, and significance. The Commissioner of Patents in his decision, in determining the question of confusion, was, evidently, erroneously influenced by the same consideration that seemed to influence the decisions in the District Court and Circuit Court of Appeals above referred to, that is to say, that the word "Chicken" is descriptive, and, when the same is eliminat-

ed, there was no confusion between the word "White" and the words "of the Sea," and that "Chicken," being descriptive, should not be taken into consideration in determining the question of confusion. In this view of the case, it is regarded as proper for us to consider, somewhat in detail, the characteristics of the mark "Chicken of the Sea" with respect to whether it is descriptive or suggestive, not with a view, however, of passing judgment upon the validity of appellant's mark.

While "Chicken of the Sea" is somewhat suggestive, we cannot conclude that it is descriptive. We think it is an arbitrary and fanciful mark. Furthermore, the word "Chicken," when used in connection with the words "of the Sea," is, in our opinion, not descriptive. If used alone on tuna, it is urged that it might be descriptive or misdescriptive. It is not used alone in appellant's mark, and should not be eliminated from consideration in the determination of the question of confusion. There is not one syllable of proof or one word of printed authority pointed out which supports a conclusion that there is such a thing as a chicken tuna. True enough, as has been suggested in the quoted portion of the opinion of the Circuit Court of Appeals, in some instances the word "Chicken" connotes immaturity. This is no doubt true when the word is applied to halibut, turtles, lobsters, and to female members of the human family, but, unless it is descriptive of tuna, it does not fall within the prohibition of the statute. The only testimony in the case on this question is by a witness, connected with the appellant fish canning firm, who is familiar with the mark, and is to the effect that the word suggests white-meated tuna which is in layers like pressed chicken, and that some people think that the flavor of a certain kind of tuna resembles the flavor of the white meat of chicken. "Chicken of the Sea" is surely not even suggestive of a fowl. It is well settled in adjudicated cases that a valid trademark may be highly suggestive (in our opinion oftimes the best ones are), without being offensively descriptive.

In Le Blume Import Co. v. Coty (C. C. A.) 293 F. 344, 351, the court said:

"The Trade-Mark Act of February 20, 1905 (section 5 [15 USCA § 85]), denies registration to a mark which consists merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods. It was claimed at the argument that Coty's trade-mark is descriptive, within the meaning of section 5, and so was incapable of registration. The general rule is unquestionable that a word which is descriptive of the article upon which it is used, of its ingredients, quantities, or characteristics, cannot be a valid trade-mark. Standard Paint Co. v. Trinidad Asphalt Manufacturing Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536. The rule, however, is not without qualification. The cases show that the courts under certain circumstances protect the use of words as trade-marks, even though they suggest the ingredients, qualities, or characteristics of the goods. The distinction is between words which are 'descriptive' and those which are merely 'suggestive.' Neither is it necessary that words to be available as trade-marks should carry no suggestion of any meaning. The line of demarcation may not be easy to draw but it exists. See Nims on Unfair Competition and Trade-Marks (2d Ed.) §§ 200–202."

In Orange Crush Co. v. California Crushed Fruit Co., 54 App. D. C. 313, 297 F. 892, 893, the court said:

"The Trade-Mark Act * * * prohibits the registration of a mark which consists 'merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods.' In this provision Congress evidently intended to draw a distinction between descriptive and merely suggestive marks. Marks of the former character, as we many times have declared, are not suspectible of exclusive appropriation, while those of the latter class may be. The difficulty is not so much in the statement of the rule as in its application to the facts of a particular case."

In United Lace & Braid Mfg. Co. v. Barthels Mfg. Co. (D. C.) 221 F. 456, 461, we think the correct rule of distinction between trade-marks that are merely descriptive and those that are suggestive is stated in the following language:

"The utmost that can be said is that the term 'beaded,' as applied to these tips, is somewhat suggestive of their appearance. In other words, it is used figuratively. This, however, is not enough to take it out of the range of lawful appropriation as a trademark. Every good trade-mark is suggestive; once seen or heard, its association with the product is readily fixed in the mind. If there were no association of ideas between the two,

980

it would require an independent effort of memory to recall the connection. It is not necessary to the validity of a trade-name that it should be utterly devoid of aptitude. It is enough that it leaves open to every one all words that are really descriptive."

While appellee here concedes that both trade-marks at bar are not descriptive, it certainly produces an anomalous situation for appellee to contend in an infringement suit that it has the right to use the term because it is descriptive and to contend in the Patent Office that it is not descriptive and is registrable. It is obvious that appellee seeks to reap where it has not sown. Doubts are resolved against the newcomer in trade-mark registration proceedings. Appellee is the newcomer, and in selecting its mark it should select one, not with a view of profiting by the confusion that would result, but with the purpose of avoiding confusion. There is no such poverty of words in the language of commercial men as to require the selection of a term as a trade-mark which confuses the public and invades property rights. California Packing Corp. v. Tillman & Bendel, supra; B. F. Goodrich Co. v. Hockmeyer, supra; Rotex Surgical Appliance Co. v. Kotex Co., 44 F.(2d) 879, 18 C. C. P. A. ——; Lever Bros. Co. v. Riodela Chemical Co., 41 F.(2d) 408, 17 C. C. P. A. 1272.

The decision of the Commissioner of Patents is reversed.

Reversed.