**VAN CAMP SEA FOOD CO., Inc., v. COHN-HOPKINS, and four other cases.**

**No. 6492.**

Circuit Court of Appeals, Ninth Circuit.

March 14, 1932.

John H. Miller and A. W. Boyken, both of San Francisco, Cal., Albert J. Fihe, of Chicago, Ill., and N. D. Thomas, of San Francisco, Cal., for appellant.

Harry L. Cohn, of Long Beach, Cal., for appellee Cohn-Hopkins.

William S. Graham, of San Francisco, Cal., for other appellees.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

WILBUR, Circuit Judge.

These several actions were brought to enjoin the infringement of appellant's trademark "Chicken of the Sea" as applied to young tuna fish canned by it, and to secure damages for such infringement. By stipulation they were consolidated for purposes of convenience.

Registration of this trade-mark was granted to the White Star Canning Company, appellant's predecessor in interest, in May, 1914, application therefor having been filed in December, 1913. This trade-mark was before this court in Van Camp Sea Food Co. v. Westgate Sea Products Co., 28 F.(2d) 957. We there held that "Breast-O'-Chicken" did not infringe the trade-mark "Chicken of the Sea" for the reason that the word "chicken," the only word common to both, was descriptive and not the subject of appropriation by way of trade-mark. We expressly declined to pass upon the validity of the trade-mark "Chicken of the Sea" taken in its entirety.

Since that decision, the matter has been twice presented to the Court of Customs and Patent Appeals. In the first instance, the present appellant was opposing the registration of the trade-mark "Breast-O'-Chicken" by one of the appellees in this proceeding. The court declined to register the proposed trade-mark "Breast-O'-Chicken," for the reason that the use of such trade-mark would tend to confuse in the mind of the public the product of the appellee with the product of the appellant packed under the registered trade-mark "Chicken of the Sea." Van Camp Sea Food Co., Inc., v. Westgate Sea Products Co. (Cust. & Pat. App.) 48 F.(2d) 950.

Later, another of the appellees in this action attempted to register "White Chicken" as a trade-mark for canned tuna, and the application was rejected upon appeal to the Court of Customs and Patent Appeals for the same reason that registration was refused for "Breast-O'-Chicken." Van Camp, etc., v. A. B. Stewart Organizations (Cust. & Pat. App.) 50 F.(2d) 976. In this decision the Court of Customs and Patent Appeals considered the opinion of this court in Van Camp Sea Food Co. v. Westgate Sea Products Co., 28 F.(2d) 957, but nevertheless held the entire trade-mark "Chicken of the Sea" not to be descriptive, and therefore that it was properly registered as a trade-mark.

These cases did not involve the question of appellant's right to the exclusive use of the phrase "Chicken of the Sea" as a trade-mark. The Court of Customs and Patent Appeals

recognized that it had no jurisdiction to decide that question. Van Camp, etc., v. A. B. Stewart Organizations, 50 F.(2d) 976, supra.

The trial court, in the cases at bar, held that appellant's trade-mark was not a valid trade-mark, relying therefor upon our decision in Van Camp Sea Food Co. v. Westgate Sea Products Co., 28 F.(2d) 957. If we follow our former decision, it is difficult to avoid the conclusion reached by the trial court in this case. The basis of the decision in Id., 28 F.(2d) 957, was that the word "Chicken" was descriptive of the product packed, and in effect that "Chicken" as applied to tuna indicated "young tuna" or "tender tuna," and is no more subject to appropriation than the word "young" or the word "tender." The phrase "of the sea," as applied to fish caught in the sea, is also descriptive. The expression "Chicken of the Sea tuna" would simply mean "young tuna caught in the sea," a purely descriptive title, and is not at all a fanciful or arbitrary designation or mark, so that the entire phrase is no more subject to appropriation than is the word "chicken," which we have already held could not be monopolized by trade-mark. Furthermore, it is well settled that a geographical designation is not subject to appropriation as a trade-mark, and the phrase "of the sea" is clearly of that nature. It indicates the place from which the product comes, and to that extent is descriptive in the same sense that any geographical term is descriptive. It is peculiarly so as applied to a product coming from the sea.

It appears from the testimony in the cases at bar that the phrase "Chicken of the Sea" is descriptive in a sense not mentioned or considered in our former decision. The evidence in the cases at bar showed that young tuna such as is packed under the various brands now under consideration looks and tastes like chicken, and that the phrase "Chicken of the Sea" was commonly used in the tuna canning industry at San Pedro, Cal., where the fish are packed, as early as 1907 or 1908, six years before appellant's predecessor registered the trade-mark "Chicken of the Sea." W. B. Ambrose, president of the Westgate Sea Products Company, one of the defendants, testified that he had been connected with the industry on the Pacific Coast since 1909, and had been packing tuna since 1912; that he first heard of the term "Chicken of the Sea" in 1908 or 1909.

"It is a term that has been very, very common in the tuna business. As far as I have been able to ascertain it was a slogan started by A. P. Halfhill in connection with Sig Seaman of Seaman Brothers New York. He used the phrase 'Chicken of the Sea' in the Southern California Fish Company from the time it was organized in 1909. It was used to sell tuna by, it was a very high sounding phrase and adopted by everybody in the tuna business as a generic term. The words 'Chicken of the Sea' have been used always, as far as my recollection goes in the tuna business to designate tuna. It started first as 'White Meat Tuna,' but it tastes so much like chicken it has become a common expression to call tuna 'Chicken of the Sea.' They never used it on a label, or as a trade-mark. They never did use it on a label. It was a generic term used in the trade generally."

August Haurin, Jr., assistant sales manager for Stewart-Curtis Packers, Inc., testified in part as follows: "We came to adopt 'White Chicken' as a brand name as follows: Prior to 1927 we had only one label which used the word 'white' being 'White Banner,' and we adopted a new fancy pack of tuna, and it was then decided to get a more characteristic label, something that would bear out the resemblance between white tuna meat and barnyard chicken, and 'White Chicken' was designed for that reason."

Harry J. Halfhill testified that he was an officer of the Halfhill Packing Company, one of the defendants; that he had been connected with the fish canning industry in Southern California since 1909, and was a director of the Southern California Fish Company; that he had heard the term "Chicken of the Sea" used in connection with tuna other than that manufactured and packed by the Van Camp Sea Food Company as early as 1907; that his father was recognized as the father of the tuna industry; that in 1907 they canned about 600 cases of albacore or white-meat tuna; that his father went East and called on the trade in the principal markets, and, when he returned from that selling trip, the witness began to hear the expression "chicken of the sea"; that the phrase was used not as a label but as a sort of slogan; that it was used by his company in sales talks and was referred to as "chicken of the sea"; that it was known as "chicken of the sea" until the White Star Cannery adopted it as a slogan or trade-mark; that he thought the trade had become accustomed to hearing the term "chicken of the sea" as a generic term for tuna; that the Southern California Fish Company never used the slogan "Chicken of the Sea" from an advertising standpoint, but it is mentioned and talked of as "Chicken of the Sea." There is no testimony to contradict this evidence.

Mr. Frank Van Camp, president of the appellant corporation, testified that he had not known of the use of the word "chicken" as a trade-mark in connection with tuna fish until it was adopted by his company's predecessor as a trade-mark. This testimony is negative. He first became acquainted with the fish canning business in California in 1914, which was after the trade-mark in question had been registered by appellant's predecessor in interest. It thus appears that canned young tuna looks and tastes like chicken, and no doubt it is an endeavor to capitalize this fact which has resulted in the use of the word "chicken" in the various trade-marks under consideration in this case. We have here "Chicken of the Sea," "Breast-O'-Chicken," "White Chicken," and "Better-than-Chicken." In all these phrases we have the word "chicken," which, in our previous decision, we held was descriptive because it indicated young and tender fish, but it further appears from the evidence in this case that there is an even stronger reason for concluding that the word is descriptive because the product is not only young and tender but also looks and tastes like chicken. The evidence of the general use of the words "chicken" and "chicken of the sea" as applied to canned young tuna evidently impressed the trial judge, who referred to this additional evidence in the following finding: "That the United States Circuit Court of Appeals, for the Ninth Circuit, determined in the case of Van Camp Sea Food Co. v. Westgate Sea Products Co., 28 F.(2d) 957, that the word 'chicken' when used in connection with fish was descriptive of the goods; that there was additional evidence to the same effect introduced before this court at the trial of this cause; that the goods on which the alleged registered trademark of plaintiff is used are canned fish, which is a product of the sea."

It was conceded on the argument, as it must be, that, if the phrase "Chicken of the Sea" was generally used in the canning industry to describe young tuna, it could not be monopolized by one in the canning industry by adopting it as a trade-mark.

We do not base our conclusion upon the prior use of the term in the industry but upon the proposition that the term "chicken of the sea," as applied to young tuna, is descriptive of the product, and therefore is not subject to registration as a trade-mark, and that the use of that phrase in the trade previous to its adoption by the appellant merely indicates the appropriateness of the descriptive phrase as applied to canned tuna. That descriptive names cannot be monopolized in a trade-mark is too well settled to require discussion. The principle is announced in our former decision, 28 F.(2d) 957, and is stated at length in Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 S. Ct. 456, 55 L. Ed. 536, and Estate of P. D. Beckwith, Inc., v. Commissioner of Patents, 252 U. S. 538, 40 S. Ct. 414, 64 L. Ed. 705.

In each of the .cases now under consideration, the appellant not only alleges infringement of trade-mark, but also alleges unfair competition. Jurisdiction in every case but one is predicated upon infringement of trade-mark, there being no diversity of citizenship, and our decision that the trade-mark is invalid precludes further consideration of the question of unfair competition for lack of jurisdiction. Jell-Well Desert Co. v. Jell-X-Cell Co., 22 F.(2d) 522 (C. C. A. 9). In the case in which Stewart Curtis Packers, Inc., is the appellee, there is diversity of citizenship, and the trial court had jurisdiction to consider the question of unfair competition independent of the validity of appellant's trade-mark. Apparently the question was not strongly pressed in the trial court, and is not here. The appellant has not included in its specification of errors the ruling of the trial court as to the matter of unfair competition as required by rule 24 of this court, and we therefore refrain from passing on the question.

Decrees affirmed.