## WEINER et al. v. NATIONAL TINSEL MFG. CO.
### No. 7592.

Circuit Court of Appeals, Seventh Circuit.
Oct. 24, 1941.

James A. Hoffman and Wm. A. Strauch, both of Washington, D. C., for appellant.

Ralph W. Brown, of Milwaukee, Wis., for appellees.

Before MAJOR and MINTON, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order, entered December 11, 1940, awarding a preliminary injunction, enjoining the defendant from the use of the trade names "Tye-Ad-String" and "Ribbontye" in simulation of the names "Print-Ad-String" and "Ribbonette" by which plaintiffs' similar products were known and designated. In compliance with the order, plaintiffs gave bond in the sum of $5,000 to protect the defendant from all damages and costs which might be adjudged against the plaintiffs by reason of any wrongful or improvident issue of the injunction.

The injunction was predicated upon a verified bill of complaint, affidavits and exhibits. The complaint filed June 25, 1940, charged the defendant with trade-mark infringement and unfair competition. It was disclosed that for twenty-five years prior to the institution of the suit plaintiffs had been engaged in the manufacture and sale of advertising tape used for tying packages. The product is a ribbon-like, cotton tape upon which the user may cause its name to be printed, with accompanying advertising matter. It is not a woven fabric, but consists of glued cotton yarn. The tape was manufactured in two grades, the cheaper or courser grade being known as "Print-Ad-String" and the finer grade as "Ribbonette." It was shown that plaintiffs, during the years they had been engaged in the manufacture and sale of this product, had, from a small beginning, developed into a large and prosperous business. Throughout the years they had carried on an extensive advertising campaign, and for the past five years had expended for such purposes, more than $25,000 annually. Their volume of business for the past five years has averaged in excess of $900,000; they have 28,000 customers and employ numerous salesmen who semi-annually visit every city in the country having a population of 5,000 or more.

About May 1, 1940, the defendant commenced the sale of a flat, ribbon-like tape under the name of "Tye-Ad-String" and "Ribbontye." The former name was applied to a coarser grade of tape corresponding to the plaintiffs' coarser grade "Print-Ad-String" and the latter name was applied to a better grade of tape corresponding to plaintiffs' "Ribbonette." Admittedly, when defendant commenced the sale of its product under the names in question, it had knowledge and was familiar, not only with plaintiffs' product, but the trade names under which it had been sold for many years.

Defendant argues its case here as though the appeal was from an order finally adjudicating the controversy on its merits. Such is not the case. The court properly, by its findings and conclusions, left open for further consideration and future determination, the merits of the controversy. We intend to do likewise. In fact, an appeal from an order of the nature here involved presents only the narrow question as to whether the District Court abused its discretion in allowing plaintiffs' motion for a preliminary injunction. Selchow & Righter Co. v. Western Printing & L. Co., 7 Cir., 112 F.2d 430; Independent Cheese Co. v. Kraft Phenix Cheese Corp., 7 Cir., 56 F.2d 575. In the latter case, this court, 56 F.2d on page 575, said:

"* * * It is the exercise of judicial discretion by the District Court which is the subject of review. If its discretion was not abused, or stating it differently, if its discretion was not improvidently exercised, its injunctional order will not be reversed upon appeal. Alabama v. United States, 279 U.S. 229, 230, 49 S.Ct. 266, 73 L.Ed. 675."

We do not agree with defendant's contention that the assailed order was improvidently granted. On the other hand, we are of the opinion that the record fully supports the court's action. We do not deem it necessary to enter into any discussion of the numerous questions argued by the defendant, as they will be more pertinent upon a hearing wherein the merits of the controversy are finally determined. It is sufficient to make brief reference to some of the reasons which sustain the controverted order.

Plaintiffs originated their trade names and caused them to be registered as trade-marks in the United States Patent Office. The name "Print-Ad-String" was registered as a trade-mark February 15, 1927, pursuant to the Act of February 20, 1905, 15 U.S.C.A. § 81 et seq., and the name "Ribbonette" was registered under the same Act, October 23, 1917. A proper registration certificate was issued as to each name. Defendant argues that such registrations are invalid on their face because the words used in such trade names are merely de-

98

scriptive of the product with which they are associated. Great reliance is placed upon Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536, wherein it was held the word "ruberoid" was descriptive when used in connection with, and applied to, roofing. We are of the view that neither this case nor any of the other cases relied upon by the defendant is controlling in the instant situation. The District Court indicated, without expressly finding, that the trade-marks were "suggestive, rather than descriptive." [35 F.Supp. 772.] It is pertinent to observe that a strong presumption exists as to the validity of the trade-marks and likewise a presumption that they are not descriptive. Detroit Motor Appliance Co. v. Burke, D.C., 4 F.2d 118, Feil v. American Serum Co., 8 Cir., 16 F.2d 88, Alfred Schneier Co., Inc. v. Sam Bramson, D.C., 16 F.Supp. 493. Certainly this presumption, strengthened by an almost universal acquiescence by the public for twenty-five years in the use of such names by the plaintiffs, in connection with an inspection of the names as applied to the product with which they are used, would not justify us in concluding that the trade-marks are invalid because of descriptiveness.

The Court below found that the trade names employed by plaintiffs had acquired a secondary meaning, indicative of origin and that the names used by the defendant are confusingly similar to plaintiffs' trade-marks. We think the record supports the findings of the court in this respect. Just why the defendant should endeavor to sell its product under names so strikingly similar to those long employed by the plaintiffs, is not readily discernible, unless it was for the purpose of capitalizing upon the good will and reputation of the plaintiffs. That such was the case must be strongly inferred from the record as it now stands.

Plaintiffs' trade names having acquired a secondary meaning, their validity as registered trade-marks is immaterial to the instant question. Under such a situation, they have a common law right which they are entitled to have protected. In referring to the secondary-meaning doctrine, the court in Armstrong Co. v. Nu-Enamel Corp., 305 U.S. 315, 335, 59 S.Ct. 191, 201, 83 L.Ed. 195, said:

"* * * This establishes, entirely apart from any trade-mark act, the common law right of the Nu-Enamel Corporation to be free from the competitive use of these words as a trade-mark or trade name. * * *"

There is no occasion to further discuss the situation. It is our judgment that there was no abuse of discretion in allowing the order appealed from. It is therefore affirmed.