BROWNS HOSIERY MILLS, INC.,
Appellant,

v.

RUSSELL HOSIERY MILLS, INC.,
Appellee.

Patent Appeal No. 6892.

United States Court of Customs
and Patent Appeals.

Jan. 16, 1963.

F. M. de Rosa, Watson, Cole, Grindle & Watson, Washington, D. C., for appellant.

G. Cabell Busick, Mason, Fenwick & Lawrence, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This is a petition to cancel two trademark registrations.

The issue before us is whether the concurrent use on the identical goods, hosiery, as trademarks, of SWEATER KNIT, SWEATER-MATES, and SWEATER SOFT would be likely to cause confusion, mistake, or deception of purchasers as. to the source of the hosiery, within the meaning of section 2(d) of the Trademark Act of 1946, 15 U.S.C. § 1052(d).

Appellant owns the trademark SWEATER KNIT, Reg. No. 678,488 of May 12, 1959. It commenced to use that mark in 1952 and has used it ever since on a line of hosiery products, total sales of which to April, 1960, amounted to about three million dollars. Some 40 or 50 different styles of socks in the three general categories of crew socks, bobby socks, and knee-high socks appear to have been sold under the mark.

Appellee is the owner of registrations on the Principal Register of SWEATER-MATES, Reg. No. 649,757 of August 6, 1957, and SWEATER SOFT, Reg. No. 650,960 of August 27, 1957. The only goods named in these registrations is hosiery. These are the registrations appellant has petitioned to cancel. The Patent Office Trademark Trial and Appeal Board denied the petition, from which decision this appeal was taken.

Appellee admits the priority of use by appellant-petitioner of its mark and states in its brief that there is no dispute as to appellant's sales of its product or regarding advertisements of SWEATER KNIT, which appellant's president testified had been run in various trade magazines. Appellant alone took testimony and its sole witness was its president. The significant matters, other than those already mentioned, on

which he testified, are that his company's socks retail at from 29¢ to around a .dollar; that they are sold to a large extent through chain stores, nation wide; that the socks sold under the trademark are knit socks; that though he had been in the knit socks business since 1929 he had never heard the term "Sweater Knit" used descriptively in the knitting trade; and as to the selection of the trademark he said, "we pulled it out of the air like we do all the names we have." While appellee took no testimony on its own behalf, its counsel cross-examined appellant's president at length. Indeed, many of the above points were developed on cross-examination.

An exhibit in evidence, a survey made in 1955 by the magazine "The American Girl," shows that appellant's SWEATER KNIT socks had attained a recognized degree of popularity in the year prior to appellee's claimed dates of first use of its marks.

In a brief opinion the board, after stating only the essential facts, set forth all of its reasons for dismissing the petition in the following paragraph:

"The marks in question are similar only in that each commences with the word 'Sweater' which, as applied to hosiery, would more than likely suggest to purchasers that the goods are either knit like a sweater or are intended to be worn as a co-ordinate therewith. Giving due consideration to the suggestive nature of these marks, and to the differences between them when considered in their entireties, it is concluded that confusion or mistake or deception of purchasers is not reasonably likely to occur."

On a request for reconsideration the board adhered to its decision, saying:

"Upon reconsideration, the Board remains of the opinion that the resemblances between the marks here involved are not such as to be likely to cause confusion or mistake or deception of purchasers."

We cannot agree with the decision of the board and we believe that, on careful analysis, it will be seen that the reasons it gave for its decision do not support it.

The argument in this case, and we presume it was the same before the board, revolves about the supposed "suggestiveness" of the word "sweater" as applied to socks. Appellee bases its case on that notion and on it predicates arguments as to the persuasive value of a large number of precedents it has marshalled from the decisions of this court involving two-word marks one word of which was "suggestive" in character.

■ The first point made by the board is that SWEATER KNIT would "more than likely" suggest that the socks are knit like a sweater. To us, this statement is practically devoid of meaning. We take judicial notice of the fact that both socks and sweaters are ordinarily knit. They resemble each other in that respect and the word "knit" aptly describes both. But what does "sweater knit" mean, as applied to a sock? If knit *like* a sweater, then like what kind of a sweater? The variety of knitting in sweaters would appear to equal the variety of knitting in socks, or even to exceed it. The only testimony on the point, which is uncontroverted, is to the effect that the term "sweater knit" is unknown to the knitting industry.

■ Appellee, whose primary objective is to inject some definite meaning into the expression "sweater knit," contends that on the basis of the "usual understanding of the words SWEATER and KNIT when combined together," the appellant's trade-mark "is clearly suggestive as applied to bulky knit socks." Why bulky socks? Sweaters are not necessarily bulky. It is common knowledge that most sweaters are not bulky. Bulky sweaters, if we are correct in our understanding of the term, are but one type of sweater, wherefore the term "sweater" as applied to a sock would not connote bulkiness.

The most we can find in the term "sweater" as part of a trademark for

socks by way of suggestiveness is that it generates in the mind an *association* with something soft and warm. The generation of such mental associations, while avoiding the use of common descriptive terminology open to all to use, is one of the prime functions of trademarks of a certain type. It does not follow from the successful selection of such a suggestive trademark that others desirous of creating the same impression or association are free to imitate or copy the mark because of its suggestibility.

Appellant has referred us to the history of the prosecution of appellant's application to register its mark as proof of the "suggestiveness" of SWEATER KNIT. The prosecution referred to, however, is that wherein the examiner initially took the position that the mark was *descriptive* as applied to hosiery, within the meaning of section 2(e) (1) of the trademark act, a position from which the examiner withdrew. We are unable to see that this shows anything other than an admission of error on the part of the examiner as to his first impression. In any case, we are not in disagreement with the proposition that there is a suggestiveness of the kind we have referred to in appellant's mark, as there is suggestiveness in the trademark "Velvet" for smoking tobacco and in many other good trademarks which readily come to mind.

We feel that the board's other point, that SWEATER KNIT suggests that the hosiery is intended to be worn as "co-ordinates" with sweaters, is even further afield.

Appellee has introduced five third-party registrations, "For the purpose of showing that the word SWEATER which is the only feature common to the trademarks here involved, is an apt term for various articles of wearing apparel * * *." The first is SWEAT-R-BLOUSE for knitted blouses and sweaters, Reg. No. 404,342. The next two are THE SWEATER GLOVE and THE SWEATERED HAND for knit gloves and mittens, Regs. No. 620,441–2. The last two are SWEATER GIRL and SWEATERETTE for brassieres, Regs. No. 586,494 and 655,887. The board made no mention of any of these registrations. None of them in any way relates to hosiery, the only goods here involved. There is no evidence that any of the marks are in use so as to have had an effect on the public mind. Four of the registrations issued from two to five years after appellant's adoption and first use of its mark. If these registrations show anything of significance here, it would seem to be that the term "sweater" has no necessary connection with hosiery, is arbitrary when applied thereto as a trademark, and would not be likely to be considered suggestive of socks, as appellee contends, even when combined with the word "knit." It is to be presumed that if anyone other than appellant and appellee had ever registered a mark including the word "sweater" for socks or other hosiery that appellee would have cited it.

Finally, appellee argues that the "equities" of the situation favor it, basing this argument on the facts that its applications to register were copending with appellant's application and no interference was declared and that appellant did not file an opposition. The statute provides for cancellation proceedings as well as oppositions and interferences and we are inclined to believe that whatever "equity" may have accrued to appellee by virtue of appellant's choice of procedure, it is cancelled out by appellee's adoption of two marks including the word "sweater," the distinguishing feature of appellant's mark, long after the trademark SWEATER KNIT achieved a degree of popularity in the marketplace. The argument is also made that appellee obtained substantial rights by the registration of the marks SWEATER-MATES and SWEATER SOFT and should not be deprived of those rights unless a clear showing of error by the Patent Office is made. On the other hand, it is equally true that appellant obtained substantial rights not only from its registration but from its prior adop-

tion and use and continuing use of SWEATER KNIT which appears to us from the record to have been quite distinctive until appellee came along. If the validity of appellee's arguments is accepted, however, the distinctive nature of appellant's mark would very likely be destroyed by other imitators following in appellee's footsteps.

It is our opinion that with the three marks before us in concurrent use on identical goods confusion of the public would be likely; that the Patent Office was in error in granting appellee's registrations; and that the board erred in dismissing the petition to cancel.

We have considered all of the prior decisions relied on by appellee but see no need to discuss them in detail. As we have often said, trademark issues of this character must be decided on the basis of the facts in each case. The decision of the board is reversed.

Reversed.