**POLAROID CORPORATION, Appellant,**

v.

**ANKEN CHEMICAL & FILM CORPORATION, Assignee of Cormac Photocopy Corporation, Appellee.**

**Patent Appeal No. 7280.**

United States Court of Customs and Patent Appeals.

April 15, 1965.

Donald L. Brown, Cambridge, Mass., for appellant.

Robert B. Harmon, Washington, D. C., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

Polaroid Corporation appeals from the decision of the Trademark Trial and Appeal Board, 138 USPQ 327, dismissing its opposition to registration of the mark "POLYCOPY" for photocopying machines, photographic developer and photographic copying paper.

Application [1] was filed by the Cormac Photocopy Corporation to register the mark "POLYCOPY" and duly assigned by it in March 1961 conveying all of Cormac's interest and good will in the trademark to Anken Chemical & Film Corporation, appellee here.

The evidence on behalf of the parties was stipulated.

This appeal comes before us on the record, appellant's brief and argument by appellant's counsel. Appellee submits on the record.

The relevant facts of record as found by the board are substantially as follows:

Since on or about September 13, 1937, appellant has continuously used the designation "POLAROID" as the salient feature of its name and as a trademark for its many products. Beginning as early as 1948 it has used "POLAROID" as a trademark on a variety of photographic products, such as cameras, films, developers, picture rolls and other accessories of a related nature. Since about October 1, 1951 it has sold the "POLAROID COPYMAKER," a device used to photograph and make copies of papers and documents. Since 1957 it has sold the "POLAROID PRINT COPIER," a device used with a "POLAROID" camera to make copies of prints. Since prior to the date of first use alleged by appellee it has sold "POLAROID" copy filters and copy lenses which are placed over the regular lens of a "POLAROID" camera to assist in making copies of documents with the "POLAROID COPYMAKER." Since 1951 it has been engaged in research and development work in the document copying field and in 1962 it began selling a "POLAROID" camera designed for copying photographs, wall charts and x-rays. Appellant operates the "POLAROID COPY SERVICE" through which it has sold copies, enlargements, and negatives of "POLAROID" prints and transparencies since 1949. Appellant's products are sold to industrial and commercial users, governmental agencies and in all fifty states to the consumer directly and through wholesale and retail outlets. Total sales volume of appellant's products have increased from a sum in excess of $26 million in 1955 to over $100 million in 1961, with more than ninety percent of these amounts attributable to sales of photographic material; sales of "POLAROID COPYMAKER" devices from 1957 through 1961 approximate $500,000 and sales of "POLAROID PRINT COPIERS" during the period of 1958 through 1961 have exceeded $6 million. The products have been advertised on a nationwide scope through various media with promotional expenditures increasing from more than a million dollars in 1955 to a sum exceeding nine million dollars in 1961.

In association with the mark "POLAROID," appellant has also used the mark "POLACOLOR" for motion picture color prints since 1947, and "POLAPAN" since April 26, 1955 for sensitized photographic film with substantial sales of its products sold thereunder.

Appellee's claimed first date of use of "POLYCOPY" is October 20, 1958. The mark was adopted by appellee's predecessor, Cormac Photocopy Corporation, as a trademark for photocopying machines, photographic developer and photocopying paper. Cormac engaged in extensive advertising, promotion and sales of these products under the mark "PO-

LYCOPY" during 1958 and through 1960. Following the assignment, appellee has continued to advertise and sell these products under the trademark to industrial, commercial and governmental users. It was stipulated that the prefix "POLY" and the suffix "COPY" are in common usage in the photocopying industry to designate goods relating to photocopying machines and related products. The stipulation contains a list of fifteen third-party registrations for marks comprising as a portion thereof either the term "POLY" or "COPY" for photographic and kindred products as indicative of common usage of these terms.

The record supports the finding of the board that appellant and its products have, long prior to appellee's adoption and use of "POLYCOPY," become well and widely known and identified in the trade and by the purchasing public by the mark "POLAROID"; that appellant's use of such marks as "COPYMAKER," "POLAROID COPY-MAKER," "POLAPAN" and "POLA-COLOR" also antedates appellee's use of "POLYCOPY"; that the parties market under their respective marks closely related photographic equipment which is dispensed through similar channels of trade and is intended for and purchased by the same classes of purchasers.

■ We have stated the factual situation presented by the record at some length. We find no rational basis therein to serve as a predicate upon which to sustain appellant's arguments that likelihood of confusion resides here between appellee's mark and any of the marks of appellant. We think it would require an unwarranted excursion into the realm of surmise to assume, as appellant contends, that purchasers would be likely to refer to appellant's copy filters and lenses as "POLACOPY" filters or "POLACOPY" lenses and to its copy department as "POLACOPY SERVICE."

The board set forth its views on the issue as follows:

"The issue of likelihood of confusion herein turns therefore on whether or not applicant's mark is confusingly similar to 'POLAROID' and/or 'COPYMAKER,' 'POLA-ROID COPYMAKER,' 'POLAPAN' and 'POLACOLOR.' Considering these marks in their entireties, it is our opinion that applicant's mark 'POLYCOPY' is so clearly distinguishable from each of opposer's marks in every material respect that purchasers are not likely to ascribe a common origin to the goods sold thereunder."

We agree with the board. "Poly" has a meaning well known to the public and it is not the legal equivalent of "Pola," assertedly the distinguishing characteristic of appellant's mark.

■ Appellant contends that appellee's mark "POLYCOPY" is descriptive of its goods and cannot function as a trademark. In support of this contention, appellant relies on the fact that "Poly" has been adopted by third persons as a portion of marks for photocopying machines and related products; that "poly" means, among other things, "many" and that a brochure issued by appellee refers to "PolyCopy—many copies." The record supports the finding and conclusion of the board that appellee's use of the words "many copies" in the brochure was designed "merely to indicate the intended suggestiveness of the designation 'POLYCOPY'"; that the term "POLYCOPY" was used throughout the brochure as a trademark to identify goods of appellee's manufacture; that the designation is not a dictionary term; that the record failed to show that the phrase "POLYCOPY" is or has been commonly used in the trade to describe photocopying machines and allied equipment and that registration of "POLYCOPY" could not preclude appellant and others from employing dictionary words or terminology popular in the trade to describe photocopying equipment as being capable of producing "many copies."

The board concluded, and we agree, that on the basis of the record "POLY-COPY" is not merely descriptive or lack-

ing in trademark significance as applied to appellee's goods.

 In the proceedings below, appellant made of record a copy of one of appellee's predecessor's promotional brochures wherein the registration legend is used in association with the mark, "POLYCOPY", notwithstanding appellee does not own a federal registration for said mark, which shows a photocopying machine with the notation thereon "CORMAC POLY COPIER" rather than "CORMAC POLYCOPY." Appellant contends that on the basis of these disclosures alone, the board should have sustained the opposition and refused the registration sought by appellee.

The board took the position that inasmuch as these matters involved ex parte questions, they could afford no proper basis for entry of judgment in favor of opposer on the inter partes issues of the pending proceeding. The board stated:

"It further may be noted that if, in considering an inter partes case involving an application, facts appear which may render the mark of the applicant unregistrable, the Board under Rule 2.131 can only recommend that if the applicant finally prevails in the proceeding, registration be withheld pending a reexamination by the Examiner of Trademarks in light of such facts. Accordingly and in view of the aforementioned disclosures, should applicant ultimately prevail on the inter partes issues herein, it is recommended that the Examiner of Trademarks reexamine applicant's right of registration in light thereof."

We do not perceive any error, reviewable by us, relating to the board's disposition of this issue. In fact, the board has made no appealable determination of this specific issue but has simply invoked an applicable administrative rule.

Upon consideration of the record before us, the contentions advanced and the argument of counsel, we find no re-

versible error on the part of the board in dismissing the opposition. The decision of the board is affirmed.

Affirmed.

MARTIN, Judge (dissenting).

One conversant with photography might feel confident that the ordinary purchasers of the goods in question would not be confused. However, I feel that the ordinary purchasers would not be so conversant, and thus there is a likelihood of confusion between the marks when used on the goods of the parties.