53 CCPA

## Application of WALKER MANUFACTURING COMPANY.

### Patent Appeal No. 7568.

United States Court of Customs and Patent Appeals.

May 5, 1966.

Martin and Smith, JJ., dissented.

William H. Gross, Detroit, Mich., for appellant.

Clarence W. Moore, Washington, D. C. (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

ALMOND, Judge.

Walker Manufacturing Company appeals from the decision of the Trademark Trial and Appeal Board refusing registration on the Principal Register of the term "CHAMBERED PIPE" for exhaust systems and components for internal combustion engines.[1] Specimens filed with the application consist of labels affixed to the goods bearing the designation "WALKER CHAMBERED PIPE." Registration was thus refused by the examiner and affirmed by the board on the ground that the term "CHAMBERED PIPE" is merely descriptive of appellant's goods within the meaning of Section 2(e) (1) of the statute (15 U.S.C. § 1052).

Appellant's product or exhaust system, in connection with which the term "CHAMBERED PIPE" is used, is described in promotional literature of record as a mechanism which eliminates the conventional muffler by utilizing a series of tuning or silencing portions over the length of a pipe, such portions being carefully determined to secure optimum performance of the exhaust system. To

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Application Serial No. 165,007, filed March 19, 1963. The word "pipe" is disclaimed apart from the mark.

eliminate word description of appellant's system and show comparison therewith to the conventional muffler, we reproduce the following configurations:

It was the examiner's position that the "tuning and silencing portions" are, in fact, chambers formed in the exhaust pipe which permit the expansion of exhaust gases, serving this function in lieu of the large single conventional muffler; and that the words "CHAMBERED PIPE" aptly describe the system.

In sustaining the examiner, the board pointed out certain promotional and advertisement material used by appellant explanatory and descriptive of the system to which it would affix its alleged trademark. Pertinent excerpts from this material addressed to and disseminated among the automotive trade disclose the following: "There is a 'first' for Olds [Oldsmobile] too: the introduction of the Walker Mfg. Co. *chambered exhaust system,* the first major break-through in exhaust systems"; a description of the exhaust system as "a series of small tuning *chambers* spaced at select intervals along the length of the pipe from the manifold to the exhaust outlet"; *"NEW WALKER CHAMBERED PIPE * * * Scientifically designed tuning chambers blend exhaust tones."* (Our emphasis.)

Suffice it to say that the record is replete with like promotional material aptly descriptive of appellant's exhaust system.

In view of the above and in further reliance on standard dictionary definition of the word "chamber" as, inter alia, "an increased or compartmental space designed for some special purpose," the board concluded that "CHAMBERED PIPE" merely describes the nature and character of appellant's goods.

Appellant here poses, as it did before the board, the following question:

Without any knowledge whatsoever of Appellant's trademark, would the Court define or describe Appellant's exhaust system as a "chambered pipe"?

We are in accord with the response made by the board that:

The question * * * is not whether the Board or others may or would utilize "CHAMBERED PIPE" to describe applicant's goods, but whether this designation does, in fact, describe such goods. That there are other words which others may employ to describe or define applicant's goods does not, in any way, lessen the decriptive character of the words "CHAMBERED PIPE." * * *

We think it pertinent to add that it would be difficult to devise or divine a more apt and clearly descriptive term than that by which appellant itself designates and describes its exhaust system.

The decision of the board is affirmed.

Affirmed.

MARTIN, Judge (dissenting).

I fail to find in the majority opinion any articulated reason why the term "chambered pipe" is descriptive of appellant's exhaust system not heretofore known, and thus I am not convinced that the opinion expressed therein that the term is "apt" and "clearly descriptive" is correct.

When I think of a chambered pipe, if I have *any* mind's eye view at all, I would visualize a straight tube having spaced internal dividers. But then the term is self-contradictory, since a pipe is a hollow tube, yet to be "chambered" tends to defeat its functional purpose as a conduit.

Further, I agree with Judge Smith that there is no basis on which it can be said that the indentations or "tuning and silencing portions" are *in fact* chambers, as the examiner asserted. Even should those portions be characterizable as chambers, their presence would not be discernible without an interior view. The record does not show that the ordinary purchaser would have such a view.

Appellant's own promotional material for the trade refers three times to the tuning and silencing portions as "tuning chambers," while at the same time calls the "new type exhaust system" "Chambered Pipe" four times in the same material. But the characterization of certain portions as "tuning chambers" is not such as to make the *entire* Walker

exhaust *system*, the involved goods, "aptly" described by the term "Chambered Pipe." Also, I quite agree with appellant that the term "chambered pipe," occurring *in part* in lower case three out of 37 times in the text of exhibits of record, is no bar to registration of the term "Chambered Pipe." Walker's designation as a "Chambered Pipe," like aspirin or linoleum, *may become* generic if used other than in a trademark sense. The majority deems the phrase *"chambered exhaust system"* "aptly descriptive," but the sought-for mark is "Chambered Pipe." The issue of whether this latter designation has been lost to the public is not before us.

The fault the majority finds here apparently is that rather than an entirely arbitrary designation, appellant has chosen two words having ordinary meanings. But combinations of words having ordinary meanings applied to goods as a mark are not necessarily descriptive. I agree with appellant wherein it states:

> * * * Actually, the device is a tubular member provided with dimple-like depressions and intermediate cushion-like surfaces. Or, the device could be described as comprising a pipe section having undulations therein, or as being formed with humps and hollows or recesses, or as having raised and depressed portions. The device also includes a series of baffles, internal short pipe sections and passages. We respectfully submit that the arbitrary term CHAMBERED PIPE would not have been normally used to describe this construction. Furthermore, this component is desirable in, but not an essential part of, a CHAMBERED PIPE system.

Heretofore, engines were silenced by the use of systems comprising mufflers, exhaust pipes, resonators and tail pipes. While there may be some technical connotation to the term "chambers" in this art, "Chambered Pipe" is at best no more than suggestive to the ordinary purchaser.

Clearly there was no prior established descriptive significance to the term "Chambered Pipe." It should also be kept in mind that *the issue is not* whether or not, under section 23, the term is incapable of distinguishing appellant's goods since naturally and adequately nominative of exhaust systems. Since I do not think "Chambered Pipe" is *descriptive* of the *goods* here, exhaust *systems* and *components* for internal combustion engines, I would reverse the board.

SMITH, Judge (dissenting).

I find that considerable confusion has arisen in this case as to the goods to which the mark is applied. This confusion is reflected in the examiner's answer, the board's opinion and the majority's opinion herein. The mark, "Chambered Pipe," as stated in the majority opinion, is applied to an exhaust system for internal combustion engines. The reasoning of record and the majority as to why "chambered pipe" describes such an exhaust system, does not withstand examination. It is stated in the examiner's answer:

> * * * applicant seeks to register the term CHAMBERED PIPE *for a pipe with chambers* formed *in portions* of its length. [Emphasis added.]

The board's opinion, after reviewing certain published descriptions of appellant's exhaust system in which the term "chambers" had been used and after considering the dictionary meaning of the term, states:

> In view of the foregoing and considering that the word "chamber" is defined in Webster's Third New International Dictionary as, inter alia, "an enclosed or compartmented spaced designed for some special purpose", it is concluded that "CHAMBERED PIPE" merely described the nature and character of applicant's goods.

The majority opinion concludes with the observation:

> We think it pertinent to add that it would be difficult to devise or divine a more apt and clearly descriptive term than that by which appellant itself

designates and describes its *exhaust system*. [Emphasis added.]

The goods, appellant's exhaust system, will now be examined to see *in fact* just what the majority holds that the term "Chambered Pipe" describes. The fact which appears from the record is that appellant created a new type of exhaust system for internal combustion engines which was to supplant previous types of exhaust systems. Prior to appellant's system, a representative dual exhaust system, showing exhaust pipes, mufflers, resonators and tail pipes, appeared as follows:

Figure 5
FIRST PRODUCTION DUAL
EXHAUST SYSTEM

An example of appellant's system, in addition to the one depicted in the majority, appears as follows:

Figure 26. 1964 OLDSMOBILE "CHAMBERED PIPE" SYSTEM

It is clear that the examiner, board and the majority ignored the nature of the goods upon which the mark "Chambered Pipe" is applied. Rather, their attention was focused entirely on those portions of the exhaust system, termed "tuning and silencing" portions, consisting of visible surface indentations in the outer shell surrounding portions of the pipe. In Fig. 26, above, these indentations are

shown in the shell which surrounds the central exhaust pipe portion of the exhaust system. A longitudinal cross-sectional view of that portion may be examined:

It is significant on the issue of descriptiveness that the above longitudinal cross-sectional view shows two cooperating parts, an inner pipe and a separate outer jacket. The pipe is perforated at critically spaced intervals. The separate outer jacket is constructed of tubing that surrounds the pipe. The externally visible indentations are selectively placed along the outer jacket. By selectively locating these indented sleeves (in relation to each other, the perforations, and the pipe) appellant creates highly selective tuning and silencing portions based on acoustical theory which varies for each engine and for various operating characteristics. The differences in lengths between the indentations is based on acoustical theory and are readily visible in the figure shown. Thus, the "pipe" as shown is not "chambered." Instead it is an open conduit designed to convey the exhaust gases from an internal combustion engine to a selected discharge point and to do so with the minimum of back pressure within the pipe itself.

Like Judge Martin, when I try to visualize a device described by the term "chambered pipe" I would visualize a pipe having spaced internal dividers which would make it a "chambered pipe" in the descriptive sense. I do not consider the term "chambered pipe," to be "merely descriptive" of appellant's multi-part exhaust system for an internal combustion engine. That system is much more than a "pipe." The engine exhaust pipe is but one element of the system and instead of being "chambered," it is open. It becomes an element of a silencing system

when perforations are placed at selected areas longitudinally of the pipe, and a series of separate acoustic tuning portions of varying lengths are secured to and surround the pipe in a critical relation to the perforations therein. There are no "chambers" in the pipe.

We are dealing with the composite term "chambered pipe" and the issue of descriptiveness of this term must be reached by considering the term "chamber" or "chambered" as well as the term "pipe." Thus, the word "chambered" is used as an adjective which modifies the word "pipe." Neither the examiner, the board, nor the majority have seen fit to set forth the descriptive meaning of the noun "pipe." Instead, their attention is focused on the adjective.

Webster's Collegiate Dictionary, Fifth Edition, defines "pipe" in its third meaning as "any long tube or hollow body of wood, metal, earthenware, or the like to conduct water, steam, etc." Thus, the descriptive meaning of a "chambered pipe," utilizing the majority's definition of "chamber," would seem to me to require such a tube or body divided into "chambers," as for example may be found in a stalk of bamboo. Thus, I would find the composite term "chambered pipe" to be descriptive at best of such a structure in which the tube or hollow body is divided into chambers by a series of partitions. Moreover, as Judge Martin points out, it is a reasonable argument that "Chambered Pipe" is a contradiction in terms. I do not agree, however, that even then the term is descriptive of an internal engine exhaust system in which the significant feature

is that the exhaust pipe is *not* divided into "chambers" but instead is *an open tube or hollow body* through which the exhaust gases are conveyed from the engine to a discharge point.

I think that the majority's holding that the term "Chambered Pipe" is "descriptive" of appellant's goods is inconsistent with past decisions in which we have applied the term "descriptive" to trademarks.

In Fleetwood Co. v. Mitchum Co., 323 F.2d 1015, 51 CCPA 831, this court held that the mark "Fayd" was not descriptive of skin creams and said:

> We are unable to agree with that reasoning or conclusion. "Fade" merely suggests a desired result of the instant skin creams, but can hardly be held descriptive of the creams themselves. * * *

In Browns Hosiery Mills, Inc. v. Russell Hosiery Mills, Inc., 311 F.2d 811, 50 CCPA 848, the mark "Sweater Knit" was considered by this court and we stated:

> The most we can find in the term "sweater" as part of a trademark for socks by way of suggestiveness is that it generates in the mind an *association* with something soft and warm. The generation of such mental associations, while avoiding the use of common descriptive terminology open to all to use, is one of the prime functions of trademarks of a certain type. It does not follow from the successful selection of such a suggestive trademark that others desirous of creating the same impression or association are free to imitate or copy the mark because of its suggestibility.

These decisions seem to me to be soundly based and in line with other decisions dealing with the troublesome legal question arising from the alleged descriptiveness of a mark such as the one here in issue. While earlier decisions are not direct precedents, they are helpful in stating factors which should be considered. The majority opinion does not discuss what seem to me to be pertinent decisions and since it appears to disagree with them this possible conflict should be noted.

It seems clear to me that the mark here under consideration falls in that extensive class of marks which this court considered in Van Camp Sea Food Co. v. Alexander B. Stewart Organizations, 50 F.2d 976, 18 CCPA 1415. There the mark "Chicken of the Sea" was said to be suggestive, but not descriptive.

In my opinion the issue here involved in registration of the mark "Chambered Pipe" is very similar to that involved in registration of the mark "Polycopy" in which case we agreed with the Trademark Trial and Appeal Board that the mark "Polycopy" was not merely descriptive of photo copying machines. See Polaroid Corp. v. Anken Chemical & Film Corp., 343 F.2d 771, 52 CCPA 1220.

As I see it, the majority opinion is predicated initially upon a faulty consideration of the alleged descriptiveness of the mark which has its genesis in the examiner's incorrect designation of the goods with which the mark is used. At the risk of being redundant, I repeat, the mark is *not* for *chambered pipe*. It also is not for merely a portion of the exhaust pipe. It is for an *exhaust system for internal combustion engines* and parts thereof in which system sound attenuating or resonating spaced sleeves are affixed to the outer periphery of the pipe which, as I have pointed out herein, is not "chambered."

I would therefore reverse the decision of the Trademark Trial and Appeal Board.