**Lawrence Q. ESCH and Howard B. Esch, d/b/a Oak Creek Distributors, Plaintiffs,**

v.

**YAZOO MANUFACTURING COMPANY, INC., a foreign Corporation, Defendant.**

No. 79–C–895.

United States District Court, E. D. Wisconsin.

Feb. 23, 1981.

54

Susan Steingass, Stafford, Rosenbaum, Rieser & Hansen, Madison, Wis., for plaintiffs.

Richard W. White, Binder, Zirbel & Howard, Milwaukee, Wis., for defendant.

## MEMORANDUM AND ORDER

WARREN, District Judge.

On September 11, 1980, after a four-day jury trial, the jury returned a verdict in favor of the plaintiffs. The jury awarded the plaintiffs $450,000.00 in damages for defendant's wrongful termination of the plaintiffs' distributorship. Prior to trial, the Court had granted plaintiffs Lawrence and Howard Esch (Esches) summary judgment on the issue of liability. The Court found that defendant Yazoo Manufacturing Co., Inc. (Yazoo) had violated the provisions of the Wisconsin Fair Dealership Law, Wis. Stat. 135, when it terminated their distributorship of Yazoo lawn products without proper notice. *Esch v. Yazoo*, Case No. 79–C–895, (E.D.Wis. April 30, 1980). During trial, the Court found that, as a matter of law, the defendant's wrongful termination damaged plaintiffs. Thus, the sole issue for the jury's consideration was the amount of damages sustained by plaintiffs.

Plaintiffs' primary witness on the issue of damages was Dr. Donald Nicholas, a Professor of Economics at the University of Wisconsin at Madison. He is a graduate of Yale University and received his Masters and Ph.D. degrees from Yale as well. He has been a member of the faculty at the University of Wisconsin since 1966. He is a noted economics scholar and has published many papers and one textbook, entitled *The Principles of Economics*. Based on this extensive background, the Court classified him as an expert.

On direct examination, Dr. Nicholas testified as to his opinion of the damages sustained by the Esches. He stated that, based on his study, the plaintiffs incurred losses of approximately $556,829.00 due to the termination of their Yazoo distributorship.

According to Dr. Nicholas, he arrived at this conclusion by estimating the past income over the previous ten years, then determining how much of that income was due to handling the defendant's product line. When he reached that result, he then projected these figures ten years into the future (Transcript of Dr. Nicholas' testimony 9/9/80, at 9). In conducting this study, Dr. Nicholas relied on the income tax returns for the plaintiffs from 1970 to 1979, the percentage of total purchases of Yazoo products by the plaintiffs from 1971 to 1979, and discussion with the plaintiffs. In addition, Dr. Nicholas testified that he used a number of tables and summaries and other reports commonly referred to by economists to determine the total damages.

With regard to the determination of the percentage of profits derived from the Yazoo line, Dr. Nicholas testified that he had to rely on the percentage of purchases of those products by plaintiffs because normal accounting procedures could not produce a record of profit attributable to the Yazoo line exclusively. It was Dr. Nicholas' opinion that the percentage of profits more or less corresponded to the percentage of purchases because all items purchased were sold. He also stated that it is common to presume that the profit earned is propor-

tionate to sales. After arriving at the percentage of profits, Dr. Nicholas projected the profit ten years into the future in 1980 dollars. He chose a ten-year time span based on his discussion with plaintiffs as well as a recent study done on retirement ages. He concluded that it was probable that plaintiffs would continue in business for ten more years given their ages of 61 and 59 (*Id.* at 23).

Defendant's rebuttal expert, Dr. Peter L. Danner, testified that he was unable to estimate plaintiffs' damages because he was uncertain the partnership would continue, and he lacked the precise information showing the percentage of the partnership profits derived from the Yazoo product line. Dr. Danner was, however, impeached by his prior deposition testimony in which he stated that he had computed the plaintiffs' losses at $532,488.00 minus the sale of assets when the business closed.

Defendant has moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Defendant advances seven reasons in support of its motions. Five of these reasons relate to the plaintiffs' proof of damages and certain rulings the Court made with regard to the issue. Defendant contends that the award is excessive and contrary to the greater weight of the evidence at trial, that plaintiffs' expert testimony should have been excluded because it was too speculative, and that testimony regarding the termination as well as the amount of plaintiffs' assets was relevant and the Court should not have excluded it. The other two issues raised concern an alleged prejudicial statement by plaintiffs' counsel and the constitutionality of Wis. Stat. § 135.

■ A motion for a new trial is addressed to the sound discretion of the Court. The Court is not restrained to view the evidence in the light most favorable to the prevailing party. Rather, the Court must consider all the evidence, as well as the setting of the trial, to determine if justice has been done. *Juneau Square v. First Wisconsin National Bank of Milwaukee*, 435 F.Supp. 1307, 1317 (E.D.Wis.1977) *aff'd.* 624

F.2d 798 (7th Cir. 1980) *cert. denied* —— U.S. ——, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980).

■ Defendant's first three reasons for a new trial relate expressly to plaintiffs' evidence of damages. Reviewing all of the evidence, the Court finds that the verdict is not excessive nor inconsistent with the evidence produced at trial. Furthermore, the Court finds that the plaintiffs' expert, Dr. Nicholas, was competent to testify and that his opinions were properly based on assumptions which could be made from the evidence in the case. Fed.R.Evid. Rule 702.

Dr. Nicholas' projections of the future income of the plaintiffs' partnership were a mere extrapolation of the historical data compiled by him. That he projected ten years into the future is not troublesome to the Court nor inconsistent with the facts. He testified as to his conversation with the Esches and their intention not to retire. Furthermore, his conclusions were supported by a recent study on retirement ages.

Defendant attacks Dr. Nicholas' theory regarding the relationship of purchases to profit. It asserts that there was no basis for such an assumption. As an expert in economics, Dr. Nicholas stated that there is a relationship between purchase and profits just as there is a relationship between sales and profits. Given the overwhelming percentage of purchases of Yazoo products by plaintiff, the Court finds little support for defendant's objections.

■ Finally, defendant was afforded ample opportunity at trial to demonstrate to the jury the effect of varying certain factors in Dr. Nicholas' projections. Thus, the jury was adequately informed as to the basis of Dr. Nicholas' theory and the different result that could occur given different factors. Damages need not be proven with mathematical certainty. It is sufficient that plaintiff establishes a reasonable probability of the amount of future damages. *Pleasure Time, Inc. v. Kuss*, 78 Wis.2d 373, 254 N.W.2d 463 (1977); *See Kissell Co. v. Gressley*, 591 F.2d 47 (7th Cir. 1979); *Na-tional Steel Corp. v. Great Lakes Towing Co.*, 574 F.2d 339, 342 (6th Cir. 1978). In this case, the Court is satisfied that plaintiffs established a reasonable probability of the amount of future damages. Therefore, the jury's award is not against the greater weight of the evidence.

■ The defendant also argues that the jury award is excessive because plaintiffs should have accepted its offer of reinstatement. Had plaintiffs done so, they would have mitigated almost all their damages. At trial, the Court instructed the jury that every party to a contract has a duty to mitigate their damages if the contract is breached. *Sprecher v. Weston's Bar, Inc.*, 78 Wis.2d 26, 253 N.W.2d 493 (1977). The Court also instructed the jury that a person need not accept a position which is less than what he had before or too risky, demeaning, or insecure. *Id.* at 44, 253 N.W.2d 493. Finally, the Court instructed the jury that defendant had the burden of proving that the plaintiffs had not mitigated their damages.

Defendant does not contest the applicability of these rules of law only the jury findings. The jury in this instance apparently chose to find that the reinstatement offer was too risky and, therefore, plaintiffs did not have to accept it. The jury also found that the defendant had not carried its burden of proving that plaintiffs had not mitigated their damages in other respects as well, *i. e.*, future employment or a new distributorship. Defendant's failure to meet its burden of proof is not grounds for a new trial. In the Court's opinion, the jury award is within the range permissible based on all the evidence at trial. Therefore, defendant's motion for a new trial or remittitur on these grounds is also denied.

■ Defendant's fourth reason for a new trial involves the Court's refusal to allow the defendant to offer testimony regarding the plaintiffs' assets from the partnership. Defendant asserts that this testimony was relevant to Dr. Nicholas' retirement analysis and to the issue of mitigation. Plaintiffs assert that the issue of their wealth is irrelevant to the question of damages.

Furthermore, plaintiffs contend that the issue of relevancy as to the retirement plans was not raised at trial.

At trial, defendant was allowed to introduce evidence of the amount plaintiffs received for the liquidation of their partnership. The Court, however, precluded the defendant from asking plaintiffs' expert to deduct the sum from the damage calculations because it was irrelevant to the calculation of the loss of income stream. (Partial trial transcript, Sept. 11, 1980, pp. 24–26). In addition, defendant never raised the issue of retirement at the time and, therefore, is precluded from doing so now. Furthermore, in the Court's view, such an argument would be irrelevant. The connection between the assets of a going concern and a liquidated business for retirement purposes are too attenuated to be relevant. Defendant would have the Court and jury assume that the plaintiffs would have closed their business and retired on the liquidated assets. This assumption is, however, contrary to the evidence, particularly plaintiffs' own statements regarding their retirement plans.

■ Defendant's fifth ground for a new trial is based on the Court's refusal to allow defendant's vice president to testify as to the grounds for terminating the plaintiffs' distributorship. The Court held that, because the termination was not in issue in the trial, the testimony would be irrelevant. Defendant contends that the lack of a stated reason left a bad impression on the jury in light of the plaintiffs' testimony that they refused to renew the distributorship because they distrusted the defendant.

Rule 403 of the Federal Rules of Evidence provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time . . . ." Assuming that the testimony of Mr. Kerr had some relevancy which is doubtful, the considerations of undue delay, confusion and waste of time substantially outweighed its probative value. Had he been allowed to testify, plaintiffs would have been compelled to rebut the issue. This would have resulted in a needless waste of time and would have possibly confused the jury. Therefore, defendant's motion for a new trial on this ground must be and is hereby denied.

■ The sixth ground for a new trial presented by the defendant concerns a remark made by plaintiffs' counsel during cross-examination of Mr. Kerr. Mr. Nelson, plaintiffs' attorney, had just asked Mr. Kerr whether it was his testimony that Mr. Nelson had at a prior meeting suggested to Mr. Kerr that Mr. Kerr buy out the plaintiffs. Mr. Kerr responded, "Yes, that's what I remember." Mr. Nelson then asked, "Is that an intentional lie?" Defense counsel objected and moved for a mistrial claiming prejudice. The Court, after a discussion at the side bar, denied the motion for a mistrial subject to plaintiffs' introducing rebuttal testimony on what was said at the meeting. The Court also instructed the jury to disregard the allegation made by plaintiffs' counsel and not assume there was any falsehood based merely on the allegations of counsel. Furthermore, the Court told the jury that, if it became necessary to make a decision on whether or not plaintiffs' counsel solicited a buy out, they were only to consider Mr. Kerr's statement and a statement to be advanced by plaintiffs in rebuttal.

Defendant argues that the statement was so prejudicial that it resulted in a verdict which was excessive and against the weight of the evidence. Therefore, it requested a new trial.

Plaintiffs first argue that the statement was not prejudicial or improper. Next they assert that the Court's instructions cured any prejudice. Finally, they contend that the defendant was shown no affirmative evidence of prejudice as required under *Nimmer v. Purtell*, 69 Wis.2d 21, 36, 230 N.W.2d 258 (1975).

Defendant has not met its burden of demonstrating any prejudice which resulted from counsel for the plaintiffs' question. As stated earlier, the Court finds the ver-

dict neither excessive or contrary to the evidence. Although there is no showing of prejudice, the Court does not condone counsel's action. The question was improper. The Court recognizes, however, that, in the heat of cross-examination of defendant's primary witness, counsel is apt to act hastily, without thought. Fortunately for plaintiffs, counsel's actions did not result in a mistrial. In the Court's opinion, any adverse inference from the question was adequately cured by its instructions to the jury and plaintiffs' production of rebuttal testimony. Consequently, defendant's motion for a new trial on this ground must be denied.

Defendant's final ground for a new trial is that the Wisconsin Fair Dealership Law, Wis.Stat. 135, is a violation of Article 1, Section 10, Clause 1 of the Constitution of the United States. That section provides:

No state shall . . . pass any Bill of Attainder, ex post facto law, or law impairing the Obligation of contracts . . .

Defendant asserts that the Wisconsin Fair Dealership law, as applied here, violates this provision because it does not allow for terminations based on the internal economic conditions of a national corporation.

The Court need not reach this question because its decision on liability in this case did not concern the basis for the termination. Rather, the Court found that defendant violated the law by failing to give proper notice of the termination. Therefore, the constitutional issue is not before the Court.

In summary the Court has carefully scrutinized the record and finds no justification for a new trial. The Court is convinced that defendant received a fair trial and that there was no miscarriage of justice. Therefore, defendant's motion for a new trial must be and is hereby denied.

One issue remains for resolution in this case. Plaintiffs have filed a motion to amend the judgment to include an award of attorney's fees and costs. Under Section 135.06 of the Wisconsin Statutes, a dealer or distributor who has prevailed under the Wisconsin Fair Dealership law is entitled to

"*actual cost of the action*, including *reasonable actual attorney's fees.*"

Plaintiffs advance the novel theory that the legislature intended that the Court grant attorney's fees in the actual amount charged or contracted for subject only to a limited determination of the reasonableness of the fees. Consequently, plaintiffs have requested $112,500.00 in actual attorney's fees. This figure represents one-fourth of the jury award to the plaintiffs and is consistent with the contingent fee arrangement between the plaintiffs and their attorneys.

In support of their position, plaintiffs theorize that, because the word "actual" is in the statute, it must be given meaning. *See County of Columbia v. Bylewski*, 94 Wis.2d 153, 288 N.W.2d 129 (1980). Furthermore, they contend that the meaning of the phrase "reasonable actual attorney's fees" must be different from "reasonable attorney's fees." The meaning, proffered by plaintiffs is that the Court must treat as the lodestar the existing fee arrangement between plaintiffs and counsel whether it is a contingent fee or hourly fee rate. Then, the Court must determine if the existing fee agreement is reasonable given due deference to judgment of the parties in arriving at the fee schedule or arrangement. Plaintiffs advance a similar argument regarding actual costs. They assert that actual costs are more encompassing than taxable costs and, had the legislature intended taxable costs only, it would have so stated.

Defendant urges the Court to reject plaintiffs' theory because it lacks any supporting authority. Rather, defendant suggests that the Court employ the usual reasonable attorney fees standard in awarding fees and the taxable cost standard in awarding costs.

The Court is not persuaded by either plaintiffs or defendant's arguments. The language of the statute is susceptible to a more reasonable interpretation than those proposed by the parties. Interpreting the phrase "reasonable actual attorney's fees" in the most reasonable manner, the Court

holds that the legislature intended to authorize the courts to award attorney's fees based on the hourly rate of the attorney and not on a contingent fee. This interpretation gives proper meaning to the word "actual." Contingent fees are not actual fees because they represent something more—a risk factor that an attorney assumes when taking a case on a contingent fee basis. The risk factor adds a great degree of uncertainty to the final fee and, therefore, distinguishes contingent fees from actual fees which are not uncertain.

The hourly rate set by an attorney, however, is not the sole determining factor in the Court's award of attorney's fees. The Court must determine whether the actual hourly rate is reasonable. In reaching this decision, the Court must give deference to the hourly rate but may award a different rate if it finds that the hourly rate is unreasonable.

This interpretation of the statute fulfills the legislature's intent. It ensures that attorneys will accept fair dealership cases knowing that they most likely will receive their regular hourly rate in attorney's fees. It also, however, ensures that the statute does not become a lawyer's treasure trove because the Court has the power to determine whether the fees are reasonable.

In this instance, the affidavit submitted by plaintiffs' counsel indicates that the firm spent a total of 511.1 hours working on this case. Six of the attorneys who worked on the case have an hourly billable rate of $75.00 per hour. Three of the younger associates working on the case have an hourly billable rate of $65.00 per hour. The law clerks and legal assistants are billed at $30.00 per hour and one secretary was billed at $20.00 per hour.

With regard to the reasonableness of these fees, defendant contends that the hours claimed and the rates are excessive because of the simplicity of the case. Defendant also argues that the statute does not provide for fees for law clerks and secretaries.

■ The Court has carefully reviewed the requested attorney's fees and, with the exception of the request for a secretary's time, the Court finds the fees reasonable given the Court's discretion under Wis.Stat. § 135.06. The Court has, in the past, authorized fees for law clerks and paralegals and finds it consistent with the statute. *See Svanoe v. Zero Mfg. Co.*, Case No. 77–C–264 (E.D.Wis. January 24, 1980). Secretary's fees, however, are not awardable as attorney's fees regardless of what duties the secretary may have performed. The Court will, therefore, deduct the amount claimed for the secretary. Therefore, the Court finds that the plaintiff is entitled to $36,434.00 in reasonable actual attorney's fees.

■ Plaintiffs' request for costs includes not only those taxable costs normally allowed but also all other costs incurred such as travel and meal expenses and expert witness fees. Plaintiffs assert that the term "actual costs" in the statute provides for more than just taxable costs, otherwise the legislature would have used "taxable" instead of "actual."

Defendant claims that "actual" and "taxable" should be read as the same thing. In addition, it asserts that plaintiffs' affidavits detailing their costs are too general for the Court to determine if the costs are reasonable.

Giving the term "actual costs" its proper meaning, the Court must concur with plaintiffs that it encompasses more than just taxable costs. The Court also agrees with defendant, however, that the Court has inherent authority to determine the reasonableness of such actual costs. Attached to plaintiffs' reply brief are two additional affidavits which cure any defects in plaintiffs' earlier affidavit on costs. These additional affidavits precisely break down travel expenses and the fees for the expert witnesses. Reviewing all of the costs requested, the Court finds them to be reasonable charges and, therefore, awards plaintiffs costs in the sum of $9,942.93.

Based on the foregoing, the Court hereby orders that the judgment in this case be amended to include an award of $46,376.93

in actual costs and attorney's fees. It is further ordered that defendant's motion for a new trial must be and is hereby denied.

SO ORDERED.