Richard **BRIGHT d/b/a Augusta Dairies, Plaintiff–Appellant,**

v.

**LAND O'LAKES, INC. and Norris Creameries, Inc., Defendants–Appellees.**

Nos. 86–1848, 86–1946, 86–1947, 86–2225, 86–2231, 86–2495 and 86–2496.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1987.

Decided April 6, 1988.

Robert R. Gavic, Gavic Law Office, Spring Valley, Wis., for plaintiff-appellant.

Craig D. Diviney, Dorsey & Whitney, Minneapolis, Minn., for defendants-appellees.

Before WOOD, and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

Plaintiff-appellant Richard Bright, a dairy distributor in Wisconsin, sued defendants-appellees Land O'Lakes, Inc. and Norris Creameries, Inc., both dairy processors, when his distributor's agreement with them was cancelled. The parties stipulated that Land O'Lakes and Norris were liable for the cancellation under the Wisconsin Fair Dealership Law.[1] Bright appeals the district court's decision on summary judgment that Wisconsin law did not allow recovery of punitive damages in connection with the termination of the distribution contract. The defendants cross-appeal the district court's denial of their motion for judgment notwithstanding the verdict, in which they sought to exclude the testimony of Bright's expert, and the district court's award of attorney's fees, expert witness expenses, and accountant fees to Bright under the WFDL. We affirm.

## I. BACKGROUND

Bright distributed dairy products for a variety of dairy processors under the name of Augusta Dairies. In July 1981 Bright signed an agreement with defendant Land O'Lakes to distribute Land O'Lakes products in parts of the Wisconsin counties of Eau Claire and Jackson. Bright received compensation for hauling products from a Chippewa Falls, Wisconsin milk bottling plant to Land O'Lakes sub-distributors and for supplying Land O'Lakes products to Bright's own retailers. This arrangement lasted five months until Land O'Lakes closed the Chippewa Falls plant and asked Bright to pick up dairy products from its St. Paul, Minnesota plant. Shortly thereafter, in December 1981, pursuant to an oral agreement, Land O'Lakes granted Bright another, and much larger, distribution area, which included forty-four new retailers.[2] With this influx of new business Bright bought additional trucks, trailers, freezers, and other equipment. His tax returns for 1981 and 1982 showed net losses.

In February 1983 Land O'Lakes sold the St. Paul plant to defendant Norris Creameries. Bright continued to pick up the Land O'Lakes branded products from Norris. By the first week of July, 1983, Norris Creameries had decided to terminate Bright's distributorship. In the few days before Bright's distributorship was terminated, and before Bright received notice of the termination, Norris Creameries repre-

[1]. Wis.Stat.Ann. §§ 135.01–.07 (West 1974 & West Supp.1987).

[2]. When Bright began working for Land O'Lakes as a distributor he had only his own twenty-five to thirty retail customers.

sentatives told several of Bright's retail customers that Bright would no longer be distributing Land O'Lakes dairy products. The representatives told the customers that they should place direct orders with Norris Creameries if they wanted to continue to receive Land O'Lakes products. Bright alleges that some of these retail customers may have understood the representatives to mean that, because Bright distributed solely Land O'Lakes products, the cessation of the distributorship meant Bright would no longer be conducting any dairy distribution as Augusta Dairies.

Finally, Norris Creameries advised Bright on the evening of July 6, 1983, that his distributorship was terminated, effective immediately. By this time, in addition to his twenty-six original customers and the forty-four customers he picked up at the time of the oral agreement, Bright had acquired another thirty-three new customers. Bright sued both Land O'Lakes and Norris Creameries in Wisconsin Circuit Court; the defendants removed the case to federal district court in the Western District of Wisconsin.

## II. DISCUSSION

### Punitive Damages

Bright argues that in addition to the damages the jury awarded him on his contractual and statutory claims, he is also entitled to punitive damages on his tort claim. In granting defendants' motion for summary judgment, the district court held, however, that Bright's claim for punitive damages could not succeed because Wisconsin does not recognize a right to punitive damages in connection with a breach of contract. When reviewing a district court's grant of summary judgment, we must decide whether the documents in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see DeValk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987) (explaining summary judgment determination requires not only that there are no material factual issues but also that movant is entitled to

judgment as a matter of law). In this case the district court concluded that irrespective of the facts, Wisconsin would not recognize Bright's claim to punitive damages as a matter of law. The district court's conclusion that Wisconsin would not recognize such a right in this situation was a legal determination. *In re Burlington Northern, Inc.*, 832 F.2d 430, 433 (7th Cir. 1987). We review a district court's legal determinations *de novo*. *United States v. Montoya*, 827 F.2d 143, 146 (7th Cir.1987); *Gianukos v. Loeb Rhoades & Co.*, 822 F.2d 648, 652 (7th Cir.1987).

Bright relies principally on a 1978 case decided by the Supreme Court of Wisconsin to support his claim of entitlement to punitive damages. In *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W. 2d 368 (1978), a suit brought by an insured against his insurer, the court explained at some length the place of punitive damages in a case initially arising around a contractual relationship:

> By virtue of the relationship between the parties created by the contract, a special duty arises, the breach of which duty is a tort and is unrelated to contract damages. This tort of bad faith or malicious and intentional harassment by one party to a contract directed toward the other party, who seeks to assert his contract claim, has been referred to as a "tortious breach of contract." While that term may be a convenient shorthand method of denominating the intentional conduct of a contracting party when it acts in bad faith to avoid its contract obligations, it is confusing and inappropriate, because it could lead one to believe that the wrong done is the breach of the contract. It obscures the fact that bad faith conduct by one party to a contract toward another is a tort separate and apart from a breach of contract *per se* and it fails to emphasize the fact that separate damages may be recovered for the tort and for the contract breach.

> When it is recognized that recovery is sought for the tort and not for the breach of contract, the cliches which are relied upon by the defendants—e.g., "Pu-

nitive damages are not allowed for a mere breach of contract"—become irrelevant. The question whether punitive damages are permissible thus is not to be disposed of on grounds that what the plaintiffs assert is a breach-of-contract action, but rather must be considered under a discussion of whether the facts surrounding the tort of bad faith evidence such conduct that punitive or exemplary damages are permissible....

We emphasize at this juncture only that the tort of bad faith is not a tortious breach of contract. It is a separate intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract.

271 N.W.2d at 374 (quoting *Drake v. Milwaukee Mut. Ins. Co.*, 70 Wis.2d 977, 236 N.W.2d 204, 208 (1975)) (citations omitted). Bright reads *Anderson* as establishing a rule that a contract breach in and of itself constitutes a breach of duty and thereby demonstrates tortious conduct. A plain reading of *Anderson* shows that Bright misperceives its meaning. As *Anderson* recognizes, it is axiomatic that a breach of contract does not give rise to a tort unless within the contractual relationship there is a also a breach of duty. *See generally* J.E. Murray, Jr., Murray on Contracts § 231, at 470–71 (Bobbs–Merrill 2d ed. 1971). Therefore, beyond showing a breach of contract, Bright must establish that Norris and Land O'Lakes owed a duty to Bright.

Norris and Land O'Lakes correctly point out that *Anderson's* holding is limited to a very narrow range of cases—those involving insurance companies and their insureds. Defendants contend that *Anderson* recognized a tort claim for breach of the duty of good faith in a breach of contract situation only because an insurance company owes a duty to its insured based on the fiduciary relationship between the two. Without that fiduciary relationship, a duty, specifically the duty of good faith, never arises in the typical contract situation. Norris and Land O'Lakes argue that the relationship here, one between processor and distributor, is not a fiduciary relationship, but contractual only, and con-

sequently a duty of good faith was never created.

■ Bright contends that the underlying claim or relationship, whether or not it be of the fiduciary type, is irrelevant to whether punitive damages may be awarded. He quotes *Brown v. Maxey*, 124 Wis. 2d 426, 369 N.W.2d 677 (1985), to support this proposition:

[W]e hold that the availability of a punitive damage award is not dependent upon the classification of the underlying cause of action, but, rather, upon proof of the requisite "outrageous" conduct. We stress that punitive damages are in the nature of a remedy and should not be confused with the concept of a cause of action.

"Whether compensatory damages, special damages, or punitive damages are sought as a matter of remedy or relief is immaterial to the cause of action itself." *Wussow v. Commercial Mechanisms, Inc.*, 97 Wis.2d 136, 146, 293 N.W.2d 897 (1980).

369 N.W.2d at 680 (footnote omitted). Bright misconstrues the meaning of *Maxey*. In *Maxey* the court did not decide, as Bright claims, that no matter what the claim is, whether contract or tort, a concomitant showing of outrageous conduct will always justify punitive damages. Instead, the Wisconsin Supreme Court held that, irrespective of the type of *tort* claimed, once tortious conduct has been proven, and in addition through proof of the tort or from other evidence the tortious conduct was shown to be "outrageous," then punitive damages are properly awarded. For example, punitive damages may be awarded in a negligence case if in addition to proving negligence the plaintiff shows that the defendant acted "outrageously." *Maxey* did allow punitive damages for a tort of bad faith but only because the plaintiff demonstrated a fiduciary duty based on an insurer-insured relationship and a breach of the duty, along with outrageousness. Bright's attempt to make an end-run around fundamental tort requirements with a non-contextual quote from *Maxey* is disingenuous.

■ Based on the decisions we have before us, we can conclude that only where a fiduciary relationship exists between insurer and insured will Wisconsin recognize the availability of the tort of bad faith when the defendant insurer's actions have been outrageous. Even if we were to assume that the tort is available whenever a fiduciary relationship is established, we are unconvinced that the contractual relationship between a distributor, Bright, and a processor, Land O'Lakes or Norris, rises to the level of a fiduciary relationship. *See Hale v. Stoughton Hosp. Ass'n.*, 126 Wis. 2d 267, 376 N.W.2d 89, 93 (Wis.App.1985) ("No cause of action exists for bad faith termination of an employment contract."); *Dvorak v. Pluswood Wis., Inc.*, 121 Wis.2d 218, 358 N.W.2d 544, 545 (App.1984) (same).[3]

■ In addition to his bad faith argument, Bright also laced several mentions of tortious interference with contract throughout his "outrageousness" argument. According to Bright, a reasonable juror could have found that the defendants' representative told the four customers that Bright was out of the dairy business and not just out of the business of distributing Land O'Lakes products. Allegedly this interfered with Bright's ability to keep the four as future customers. His scant treatment of the issue requires little analysis. Bright states that "[u]nder Wisconsin law, dissemination of truthful information does not constitute improper interference with a contract." Therefore, applying Bright's articulation of Wisconsin law, if the statements were nothing more than that he was terminated from Land O'Lakes, his tortious interference claim fails because these were accurate statements. This was the finding of the trial court, and rightfully so, because the facts properly before the district court showed only that the statements concerned the Land O'Lakes relationship, and nothing more. Bright's alternative and what might have been a potentially plausible coloring of the statements was not before the district court because he failed to submit findings of fact and conclusions of law as directed by the court pursuant to its local rules. At oral argument Bright's attorney agreed that he did not submit the findings requested by the district court. Conversely, defendant Norris did make the invited submission; therefore, the district court adopted these as the findings of fact for its summary judgment determination, again pursuant to the local rules. It is clear that the district court did not abuse its discretion in applying a rule of which Bright was fully aware. "The Federal Rules of Civil Procedure, as well as local rules of court, give ample notice to litigants of how to properly conduct themselves." *Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir.1987) (within district court's discretion to enter default without first using less drastic sanctions). Bright's tortious interference with contract claim must fail.

*Expert Testimony*

■ In a cross-appeal defendants argue that the district court improperly denied their motion for judgment notwithstanding the jury's verdict on damages for the contractual and statutory claims. Subsumed within the appeal of the judgment notwithstanding the verdict denial is defendants' argument that the district court improperly admitted the evidence Bright presented to prove damages because "there was no credible foundation to support [Bright's witness's] exaggerated estimates of future profits." According to the defendants, Bright's expert witness, Dr. Behr, determined the gross revenue per capita earned by Bright in his original distribution area, a market equivalent to Eau Claire County in size, about $3.38 per person, and assumed that Bright would earn the same per capita amount in the expanded territory. This,

---

3. *Accord Jack Walters & Sons Corp. v. Morton Bldg., Inc.*, 737 F.2d 698, 711 (7th Cir.) (bad faith tort has not been extended beyond insurance setting), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed.2d 359 (1984); *Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 354 (7th Cir.1982) (franchisor does not owe a fiduciary duty to franchisee); *Benlo Chemicals, Inc. v. Buckman Laboratories*, 520 F.Supp. 160, 162 (E.D.Wis. 1981) (no "special relationship" exists between a franchisor and a franchisee).

argue the defendants, ignores the distinction between the two territories: Bright faced no competition in his original territory but faced the competition of twenty-two milk distributors in the expanded territory, five of which distributed Land O'Lakes products. Moreover, the defendants point out that Dr. Behr conducted no study to evaluate the market in the expanded territory upon which to base his conclusions. The defendants do not challenge Dr. Behr's qualifications as an expert, although they did challenge his credibility through testimony eliciting his numerous experiences as a plaintiff's expert witness; they challenge only his methodology and findings. The district court carefully considered the foundation issue and conducted a thorough voir dire examination of Dr. Behr regarding his intended testimony. The court correctly exercised its discretion in allowing the jury to hear the testimony.

The defendants objected to [the expert's] qualifications because he did not explain the procedures he used to determine market value nor the geographic locality of his expertise. The district court ruled that plaintiff had established an adequate foundation, and that any questions regarding Alexander's methodology or particular area of expertise were more appropriately addressed during cross-examination. This was hardly error. Experience and knowledge establish the foundation for an expert's testimony; the accuracy of such testimony is a matter of weight and not admissibility. *See Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 739 (1st Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 728, 74 L.Ed.2d 953 and 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983)....

*Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1308 (7th Cir.1987) (footnote omitted) ("In admitting expert testimony ..., the trial judge has broad discretion and the determination will be affirmed unless it is 'manifestly erroneous.' "), *petition for cert. filed*, 56 U.S.L.W. 3532 (U.S. Jan. 28, 1988) (No. 87–1262). The weight of Dr. Behr's testimony regarding Bright's projected earnings was for the jury to evaluate. The district court did not abuse its discretion.

The defendants argue that the motion for judgment notwithstanding the verdict must be granted because the jury rendered a verdict on mere speculation, ignoring that within the expanded territory Bright lost $7,500 in 1981 and $14,000 in 1982 and that Bright's sales decreased in the second half of 1982, "historically the best half of the year for dairy products." The defendants also challenge Dr. Behr's revision during trial of a 1984 report he prepared, in which he estimated damages between $500,000 and $600,000. His revision brought damages to the figure Bright argued for at trial, an amount exceeding $900,000. In denying the motion for judgment notwithstanding the verdict the district court stated that the defendants demonstrated that many of Behr's "conclusions were controversial, [but] they did not establish that those conclusions were so lacking in foundation as to fall below the threshold requirement for proof of damages, which is that the amount of damages be proven with reasonable certainty and not rest on mere guesswork." We review a district court's denial of a motion for judgment notwithstanding the jury's verdict *de novo. Collins v. Illinois*, 830 F.2d 692, 697 (7th Cir.1987). In our review,

we examine whether there is substantial evidence to support the jury verdict. We determine whether the evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict.

*Christie v. Foremost Ins. Co.*, 785 F.2d 584, 585–86 (7th Cir.1986). Dr. Behr estimated damages at $920,430, whereas the defendants' expert, Dr. Graf, estimated damages at $101,941. The jury awarded damages of $250,000, less the amount Bright owed Norris for product purchases, $23,391.09, or a total of $226,608.91. A review of Dr. Behr's testimony shows that he reviewed "all of the records" of Augusta, including tax returns, computer printouts of sales and expenses, spread sheets, and other work sheets. Importantly, Dr. Behr explained his application of the per

capita earnings value of the old territory, $3.38 per person, to the new territory:

> Because the relevant features of the new market are approximately the same as the old market in terms of income levels, urban/rural mix, number of grocery stores, schools, hospitals and the like, relative to the size of the population and all that sort of thing, and because Mr. Bright had penetrated his old territory from a much smaller start in about 1975 and had gotten up to the $3.38 figure, it seemed to me reasonable, especially in the light of the fact that he was indeed doing it rather well in 1982, [sic] would penetrate the new market to approximately the same degree [, selling] $3.38 to the new market. . . .

Behr determined that full penetration of the new market would occur by the end of 1986. He determined that no further penetration would occur after 1986, and the earnings he projected for subsequent years varied only according to the rate of inflation. These differing figures presented the jury a classic battle of the experts, in which the jury chose who to believe.

Whether or not Bright's methodology included reliance on questionable economic assumptions, his analysis derived from figures arguably descriptive of the Augusta Dairy business and therefore relevant to the jury's decision. Furthermore, the defendants had ample opportunity, which they utilized, to cross-examine Dr. Behr in an attempt to undermine his conclusions and analysis. They seem to have succeeded, at least in part. "Only if the award is 'monstrously excessive,' a product of passion or prejudice, or if there is no rational connection between it and the evidence may the court disturb it." *Matter of Innovative Constr. Sys., Inc.*, 793 F.2d 875, 887 (7th Cir.1986) (citations and footnote omitted). Considering the evidence in the light most favorable to the non-movant Bright we cannot say that there is no rational connection between the damage award and the evidence. The district court properly denied the motion for judgment notwithstanding the verdict.

*Fees and Costs*

Defendants claim that the district court improperly awarded attorney's fees to Bright based on his success on the contractual and statutory claims. "The district court, in its discretion may set the amount of attorney's fees awarded." *Freeman v. Franzen*, 695 F.2d 485, 494 (7th Cir.1982), cert. denied, 463 U.S. 1214, 103 S.Ct. 3553, 77 L.Ed.2d 1400 (1983). "Appellate review of a district court's discretion is very limited. Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found." *Harrington v. De Vito*, 656 F.2d 264, 269 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

■ The district court abused its discretion, according to the defendants, when it "arbitrarily deducted $4,000 from plaintiff's claim 'as a rough approximation of the time that would reasonably have had to be devoted to the tort and punitive damages claims.' " The defendants claim error because the district court gave no reason for its apportionment and plaintiff failed to meet its burden of proving entitlement to attorney's fees. The record indicates that Bright requested fees and that the defendants argued that the portion of the fees incurred litigating the tort and punitive damage claims was not recoverable. The court agreed with the defendants, subtracting $4,000 after Bright was unable to separate the recoverable from the non-recoverable fees. It is not true, as the defendants claim, that the district court gave no reason for its apportionment. The court made it clear that attorney's fees incurred in the unsuccessful claims were not recoverable. It deducted its reasonable estimate as to the fees associated with the unsuccessful claims. Our sole inquiry then is whether no reasonable person could find that $4,000 was the proper amount deducted. We are not persuaded that just because Bright could not apportion the fees the attorney's fee award is flawed.

In [some] cases the plaintiff's claims for relief will involve a common core of facts

or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). We will "not reduce the award merely because most of his theories were rejected— if the theories on which he won and those on which he lost were rejected and if his overall success in the lawsuit justified the hours his lawyers spent on the case." *Lenard v. Argento,* 808 F.2d 1242, 1246 (7th Cir.1987). Although we agree that the district court's order might have more precisely set out the figures it used to generate the $4,000 deduction, the defendants have not given any hard figures as to what a more appropriate value may have been. The defendants recite some of the activities that concerned the tort and punitive damages claims but attach no monetary figures to any of these. We are left to speculate that $4,000 is too low because, according to the defendants, "[t]he fees and expenses entailed in this unnecessary work *ipso facto* exceeded $4,000." This general attack is insufficient to show an abuse of discretion.

■ Next the defendants submit that their offer of judgment served to cut off any claims for costs beyond the time the offer was submitted to Bright. Pursuant to Federal Rule of Civil Procedure 68, Norris and Land O'Lakes served Bright with an offer of judgment in the amount of $225,000. Depending on how the damage award is characterized, Bright won either $250,000 or $226,608.91, which is the $250,000 amount less the $23,391.09 counterclaim won by Norris. Either amount is greater than the offer of judgment amount. However, since the actual damage award came "surprisingly close" to the offer of judgment, Norris and Land O'Lakes argue that the district court should have exercised its discretion and reduced or denied Bright's claim for post-offer costs. The text of Rule 68 reads that "[i]f the judgment finally obtained by the offeree *is not more favorable than the offer,* the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68 (emphasis added). The clear language of the rule, as defendants admit, does "not mandate an outright denial of post-offer attorneys' fees and expenses in this case," but they argue that "the strong federal policy of encouraging voluntary settlements and avoiding unnecessary and costly litigation should have been a factor in the District Court's determination." Clearly, Rule 68 denies an award of costs where the judgment is less favorable than the offer of judgment. That is not the situation here.

Norris and Land O'Lakes cite several cases to support the broad application of Rule 68 that they seek. However, these cases offer little support. In *Delta Air Lines, Inc. v. August,* 450 U.S. 346, 352, 101 S.Ct. 1146, 1150, 67 L.Ed.2d 287 (1981) the Court stated "[i]f a plaintiff rejects a Rule 68 settlement offer, he will lose some of the benefits of victory if his *recovery is less than the offer.*" (Emphasis added). Likewise in another case cited by the defendants, *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the Court again described the Rule 68 situation as a case where a rejected settlement *offer exceeds the ultimate recovery.* In neither case did the Court suggest that a settlement offer less than the ultimate recovery is subject to Rule 68's fee limitation. In fact, Norris and Land O'Lakes have provided no authority for the proposition that a court abuses its discretion when it fails to reduce costs where an offer of judgment inferior to the final damage award comes "surprisingly close" to the final amount. The district court was not in error.

The defendants also challenge the amount of the expert witness fee taxed to them, claiming that the federal statutory allowance set by §§ 1821,[4] 1920(3),[5] and

---

**4.** 28 U.S.C.A. § 1821 (West Supp.1987).

**5.** 28 U.S.C.A. § 1920(3) (West 1976).

1920(6)[6] of Title 28 of the United States Code applies and not the full reimbursement granted by the district court pursuant to § 135.06[7] of the Wisconsin statutes. The defendants' assertion is not without some merit as the general rule in this circuit is that where expert witnesses are involved, "the prevailing party can recover only the statutory amounts prescribed in § 1821 and not additional expert witness fees." *Adams v. Carlson,* 521 F.2d 168, 172 (7th Cir.1975). *Accord Illinois v. Sangamo Constr. Co.,* 657 F.2d 855, 865 (7th Cir.1981). However, *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 801 F.2d 908, 912 (7th Cir.1986), limits the *Adams* holding to cases "where no statute authorizes the award of attorney's fees to the winning party." *Chicago College* left open the possibility that costs or fees clearly within a fee shifting statute are not limited by the statutory amounts prescribed in § 1821. *Id.* Here the defendants do not dispute that the Wisconsin statute's language, "actual costs of the action including reasonable attorneys' fees," Wis.Stat.Ann. § 135.06 (West 1974), shows it to be a fee shifting statute nor do they challenge the district court's holding that the actual costs language authorizes a shift of the full cost of expert witness fees from the successful plaintiff to the defendant. *Esch v. Yazoo Mfg. Co.,* 510 F.Supp. 53, 59 (E.D.Wis.1981), relied on by the district court, held that actual costs include reasonable expert witness expenses. *Kealey Pharmacy & Home Care Serv., Inc. v. Walgreen Co.,* reached the same conclusion. 607 F.Supp. 155, 170 (W.D.Wis.1984), *aff'd in part, vacated in part on other grounds,* 761 F.2d 345 (7th Cir.1985).

■ Instead the defendants argue that the federal statute preempts the state statute in a case brought in federal court under the diversity statute. This is like the case left open by *Chicago College,* except here the expert witness fees are not lumped in with attorney's fees but are considered actual costs. The difference is not material, and we answer the question left unanswered by *Chicago College* and hold that in federal court § 135.06's authorization of fee shifting of actual costs to a prevailing plaintiff under the Wisconsin Fair Dealership Law is not restricted by the federal fee statute, § 1821. The district court's award of expert witness fees was proper.

■ Lastly, the defendants challenge the accountant's fees awarded by the district court. This court has interpreted attorney fee shifting statutes to include an award of "out-of-pocket expenses in preparation for trial." *Henry v. Webermeier,* 738 F.2d 188, 192 (7th Cir.1984). These expenses might include, among other items, "expenses for such things as postage, long-distance calls, xeroxing, travel, paralegals, and expert witnesses." *Heiar v. Crawford County,* 746 F.2d 1190, 1203 (7th Cir.1984) (dicta) (fees allowed by the Civil Rights Attorney's Fees Awards Act), *cert. denied,* 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Arguably the accountant work here was reasonably necessary to the attorney's preparation of the case and therefore includable as part of the shifted attorney's fees. In any event the Wisconsin statute expressly provides for actual costs in addition to attorney's fees, and there is no indication that the accountant's fees here would not be includable in the actual costs language of § 135.06. *See Esch,* 510 F.Supp. at 59. The only limitation in the statute appears to be that the costs be reasonable. In awarding the accountant expenses the district court stated the following:

As to plaintiff's use of an accountant to help to clarify the tangled financial relationships of the parties, I am satisfied this expense was necessary to an analysis of plaintiff's financial condition as a dealer and to his claim for future damages. Had the defendants' billings been more straightforward such an expense might well have been unnecessary. Under the circumstances as they actually existed, however, no lawyer or economist could have undertaken an accurate evaluation of plaintiff's case without either

6. 28 U.S.C.A. § 1920(6) (West Supp.1987).

7. Wis.Stat.Ann. § 135.06 (West 1974).

performing the accounting work him or herself or hiring a professional accountant to do it. It was reasonable for plaintiff's counsel to choose to have the work done by an accountant and it was reasonable for the accountant to devote 633 hours to the task of analyzing plaintiff's accounts and attempting to square plaintiff's figures with those of defendant.

The district court's award of the accountant's fees was not unreasonable, and we will not disturb the court's decision.

### III. CONCLUSION

Bright has failed to demonstrate that Land O'Lakes's or Norris's actions were in any manner tortious, which eliminates any basis for Bright's claim to punitive damages. Nevertheless the compensatory damage award stands; the defendants' challenges to the testimony of Bright's expert, Dr. Behr, are unpersuasive. Finally, the district court did not abuse its discretion in awarding attorney's fees, expert witness fees, or accountant fees under the Wisconsin Fair Dealership Law. Each party will bear its own costs of appeal. The order of the district court is

AFFIRMED.